## W. D. EVANS, Appellee, v. J. F. EVANS & Co. *et al.*, Appellants.

1. **Partnership:** MISAPPROPRIATION OF FUNDS ON DEPOSIT BY PARTNER: LIABILITY OF BANKER. Where the members of a copartnership resided in different towns, and the partner residing in the town where the partnership funds were kept on deposit, having authori y under the terms of the partnership to appropriate the funds of the firm to his own use to an amount equal to his share of the profits, checked out the firm's funds upon orders payable to the firm, to himself and to others, and which the evidence tended to show were used for the support of his family, for the erection of a dwelling, and in business ventures not connected with the partnership, and although his copartner received statements at frequent

intervals as to the business transacted by such partner, the amount of moneys paid out, and the balance on hand, and made frequent examinations of the books of account, yet made no protest against such misappropriation, *held*, that the evidence was not sufficient to show that the bank had constructive notice of the partner's misappropriation of the funds of the firm, nor that a note made by such partner in the name of the firm in the course of such transactions was not given in the course of the partnership business, but for the individual benefit of such partner.

2. ———— : ———— : AGENCY : DELEGATION OF AUTHORITY. A partner acting as general agent for his firm in the transaction of its business may empower the firm's employes or other persons to draw checks upon the firm's bank account, and, if the checks so drawn are within the apparent scope of the firm business, the bank will be protected in honoring the same.

3. ———— : ———— : AUTHORITY TO SIGN NOTES FOR FIRM. Where, under a contract of copartnership, one of the partners was to furnish all the money required by the firm, a promissory note made in the name of the firm by another partner, under the circumstances above recited, will be binding upon the firm in the absence of knowledge on the part of the payee that it was not for the benefit of the firm.

4. ———— : ———— : INSTRUCTIONS TO JURY. An instruction that if the funds of the firm were misappropriated by means of checks paid by the bank it would be liable therefor if it had actual knowledge of such misappropriation at the time of payment, or if they were paid under such circumstances as that, in the exercise of ordinary diligence, it had reason to know of such misappropriation, *held*, proper as applied to the facts of this case.

*Appeal from Mills District Court.*—Hon. A. B. Thornell, Judge.

Wednesday, May 20, 1891.

Action to recover the amount due on a promissory note. The defendants, J. F. Evans & Co. and J. F. Evans, denied the making of the note, and pleaded counterclaims. There was a trial by jury, and a verdict and judgment in favor of the plaintiff. The defendants named appeal.—*Affirmed.*

*Sapp & Pusey*, for appellants.

*W. S. Lewis* and *Stone & Sims*, for appellee.

ROBINSON, J.—About the month of May, 1875, the defendant, J. F. Evans, and one M. J. Curtis associated themselves together as partners under the firm-name of J. F. Evans & Co., for the purpose of carrying on a grain and commission business. Evans lived in Council Bluffs, and Curtis at Malvern. The articles of copartnership required Evans to furnish the money which should be necessary to carry on the business properly, and to devote so much of his time and attention to the business as he should see that it required. Curtis was to give all his time and attention to the business at Malvern which should be needed. The profits and losses were to be divided. The eighth paragraph of the articles of copartnership is as follows : "*Eighth*. Neither party shall withdraw from the joint stock at any time more than his share of the profits of the business then earned." The partnership thus formed continued until June, 1886, when it was dissolved. The note in suit is dated June 12, 1885 ; is for the sum of seventeen hundred dollars, with interest thereon at ten per cent. per annum, payable to the plaintiff; and is signed by defendants, J. F. Evans & Co., and Munger & Goodwin. The appellants claim that it was not given in the course of the partnership business, but was made at the instance and for the benefit of Curtis, and that the plaintiff was chargeable with knowledge of that fact when he accepted it. During the time the partnership continued the plaintiff was engaged in the banking business at Malvern. The defendants in their counterclaim allege, in effect, that, with actual and constructive notice of all material facts he paid, on checks drawn by Curtis in the firm-name and otherwise, large sums of money for the personal benefit of Curtis, which were wrongfully charged to the firm. Judgment for the sums alleged to have been thus paid, to the amount of thirty-six thousand, five hundred and ninety dollars and twenty-one cents, is demanded against the plaintiff.

The plaintiff admits that he transacted a banking business with J. F. Evans & Co. through Curtis, but

claims that J. F. Evans, with full knowledge of the acts of Curtis, of which complaint is made, ratified and confirmed them. He further claims that said Evans represented to him that Curtis was fully authorized to sign the firm-name to all checks which were so signed, and that, relying upon such representations, he paid them; that said Evans knew that Curtis would draw and present such checks for payment, and knew the purposes to which the money to be so drawn would be applied; that with such knowledge he kept silent and permitted the money to be paid; that, after it was so received and used, he acquiesced therein, and waived all right to complain on account of such payment and use of the money. The verdict and judgment against defendants were for the sum of eighteen hundred and five dollars and ninety-five cents, which was the amount due on the note.

I. It appears that, during his partnership with the defendant Evans, Curtis was connected with various

1. PARTNERSHIP: misappropriation of funds on deposit by partner. liability of banker.

business enterprises. Among them was farming and dealing in stock in Pottawattamie county, sheep-raising in Texas, and packing-house business and hardware business at Malvern. These numerous ventures resulted in the insolvency of Curtis. The evidence tends to show that he had but little, if any, capital when he commenced business with the defendant Evans. He drew money from the partnership funds with which to support his family and build a house, and no doubt used some in his other business ventures. It is claimed that he has so drawn a large amount in excess of his share of the funds, and there is evidence tending to support that claim, and to show that the note in suit was given for his personal benefit, and not for partnership purposes. The plaintiff denies that he had knowledge of any wrong intent on the part of Curtis in making the note in suit, and denies that he had knowledge of the fact that he was drawing checks in the name of the firm for his personal use. The appellants insist that plaintiff had actual knowledge of the different business interests

of Curtis, and that a large number of checks, drawn
by him in the name of the firm, showed upon their face
that they were not drawn for the purposes of the firm.
Therefore, that, in paying them, the plaintiff became a
party to the misappropriation of funds made by Curtis.
Many of the checks drawn in the business of the firm
were made payable to it, but that was not true of all of
them.    Curtis managed the business at Malvern, and
frequently drew out money for use there, and at other
points in that neighborhood where the firm was doing
business, by means of checks payable to himself.  Checks
were also drawn on account of the firm, and made
payable to other persons.    After the firm had been
doing business for some time, Curtis adopted the plan
of depositing his personal funds with the plaintiff in
the name of the firm, and drawing firm checks for his
own use.    He was entitled to draw checks payable to
himself or to the person he might select for his share
of the profits of the firm.

It is obvious, in view of the practice of the firm, and
the rights of Curtis, that the fact that checks were made
payable to Curtis and various other persons, instead of
to the firm, was not notice to the plaintiff that they were
not drawn on account of firm business.    The defendant
Evans claims that he had no knowledge of the method
pursued by Curtis in drawing checks and keeping
accounts, but his claim is contradicted by his evidence.
When business was brisk, Curtis sent to Evans daily
statements on printed blanks, showing the amount of
grain purchased, the amount of money paid out, and
the balance on hand.    At other times the statements
were sent, but less frequently..   Evans often visited
Malvern, and examined the accounts of the firm, which
were kept by Curtis.    The books of accounts so
kept showed all facts necessary to apprise anyone who
examined them of the funds received, and the disposi-
tion Curtis was making of them.    Evans admits that he
examined the books to ascertain what money Curtis
was drawing out of the business, but states that he did
not know he was drawing out more than his share.    It

thus appears that Curtis had a recognized right to appropriate firm funds to his own use, to an amount equal to his share of the profits, and he could properly draw firm checks payable to himself or to others for that purpose. The defendant Evans, after making frequent examination of the books, was unable to tell whether Curtis was drawing more than the amount to which he was entitled, but he now seeks to charge the plaintiff with constructive notice of the facts which he failed to ascertain when he had all necessary means of knowledge at his command. It is clear that he should not be permitted to succeed in his purpose. He claims that he did not fully understand the books, but we are satisfied that he knew enough of them to be able to ascertain readily whether Curtis was misappropriating funds. If his claim were conceded to be true, the result would be the same, for the jury were fully justified by the evidence in finding that the plaintiff had no knowledge of the alleged misappropriation of funds by Curtis, and that he was not a party to it.

II.    Some of the checks in controversy were drawn, and the firm-name affixed thereto, by employes of the firm or other persons by direction of Curtis, but it is claimed without the knowledge of the defendant Evans. It is insisted that Curtis was not authorized to empower such persons to sign checks; that the checks so signed, especially all not in fact drawn for firm purposes, were invalid; and that plaintiff is liable to the appellants for having paid them. Curtis was the general agent of the firm for the transaction of its business. As such agent, he had the right to empower other persons to draw the firm checks. At times he was absent from Malvern, and it was then necessary that some employe or other person should be authorized to draw checks in order to carry on the business. We think the plaintiff should be protected from liability on account of such checks drawn within the actual or apparent scope of the firm business.

2. ——: ——: agency: delegation of authority.

III.    It is said that it was the duty of the defendant Evans to furnish all money required by the firm; therefore, that Curtis had no power to make the note in suit. But it does not appear that the plaintiff had any knowledge of the alleged limitations of the apparent power of Curtis, while it does appear that the latter did at different times procure and furnish money for use in the business. The power to borrow money for the use of the firm appeared to be a proper one for him to exercise, and we think the defendants are responsible for his act in making the note in suit, in the absence of knowledge on the part of the plaintiff that it was drawn for an improper purpose.

3. ——:——:
authority to
sign notes for
firm.

IV.    The appellants complain that the charge of the court did not properly instruct the jury in regard to the circumstances under which the plaintiff would be charged with knowledge of the alleged misappropriations of funds. We are of the opinion that the charge, considered as an entirety, is not vulnerable to the objections made. The rule in regard to the payment of checks announced by the court was, in effect, that if the funds of the firm were misappropriated by means of checks paid by the plaintiff, he would be liable therefor if he had actual knowledge of such misappropriation at the time he paid the checks, or if he paid them "under such circumstances as that, in the exercise of ordinary diligence, he had reason to know of such misappropriation." The language of the charge might have been made more exact, but we think the meaning is evident, that the language used was not misleading, and that the rule stated, as applied to the facts in the case, is correct.

4. —— :—— :
instructions
to jury.

V.    The appellants make and argue at great length numerous objections to rulings of the court on the admission of evidence, to the charge to the jury, and to the verdict.    The assignments of error alone cover more than forty printed pages of the record.    The questions thus presented are for the most part unimportant, and a due regard for our duty to other litigants forbids a separate mention of each.    It is sufficient for us to say

that we have examined each objection made, but without finding any adequate ground for reversing the judgment. The court adopted a liberal rule in regard to the admission of evidence. Its charge was quite fair to the appellants. It did not describe particularly the rights of the defendant Evans, considered apart from the firm of which he was a member, but the verdict shows that the omission was without prejudice. The evidence was ample to sustain the verdict. It is probable the defendant Evans has been wronged by Curtis, but we think the jury were justified in finding that he had so far authorized the acts of Curtis, or ratified them by his conduct, that the plaintiff is not liable for the loss which resulted from them.

The judgment of the district court is AFFIRMED.