**FIDELITY & DEPOSIT CO. OF MARYLAND v. BANK OF SMITHFIELD et al.**

District Court, E. D. Virginia.
Sept. 28, 1932.

Vandeventer, Eggleston & Black, of Norfolk, Va., for plaintiff.

A. E. S. Stephens, of Smithfield, Va., and Foreman, Pender & Dyer, of Norfolk, Va., for defendants.

WAY, District Judge.

In 1927 W. E. Laine was elected treasurer of Isle of Wight county, Va. He thereafter qualified and gave the bond required by law, conditioned for the faithful performance of the duties of the office upon which bond plaintiff was surety. As such official, it was his duty to collect and account for the taxes due the county as well as for certain taxes due the state of Virginia.

Laine had two accounts in the defendant bank. One was a personal account in which he kept his personal funds, and the other an account which was carried on the books of the bank in the name of "W. E. Laine, Treasurer of Isle of Wight County." Checks drawn on the latter account were signed, "W. E. Laine, Treasurer." Printed in large letters across the top of the face of checks on that account were the words "W. E. Laine, Treasurer, Isle of Wight County, Virginia." It also appeared from the testimony of the bank's cashier that the bank knew Laine was county treasurer and that he was depositing in that account the moneys received by him for taxes and other governmental sources of revenue due the county and state.

It was the custom of the bank to honor county warrants drawn on the treasurer and for the treasurer subsequently to reimburse the bank for such warrants, by checks on said account as treasurer in the bank. In September, 1929, the bank had accumulated a number of such warrants, aggregating $4,300 in amount. At that time his account as treasurer carried a balance of less than $1,000, and in order to pay the county warrants held by the bank it was necessary for Laine to replenish that account. Thereupon, he obtained a personal loan from the bank in the sum of $10,150, depositing with the bank as collateral security for the payment of his note two certificates of deposit aggregating the sum of $10,250 issued by the bank and belonging to his father and mother. Laine thereupon deposited the net proceeds of the note, $10,000, to his said account as treasurer.

The note came due on December 7, 1929, and Laine paid it by a check of that date payable to the bank in the sum of $10,150 drawn on his account as treasurer and signed by him as treasurer, which check contained the printed wording above quoted. The bank accepted the check in payment of the note, charged the check to the account of Laine as treasurer, and returned to him the certificates of deposit belonging to the father and mother, which it had held as collateral for payment of the note.

Laine died in May, 1930. An audit disclosed a shortage in his accounts as treasurer of $10,156.97. Demand was made by the county and state upon the surety to make good the shortage, which demand the surety complied with by paying the shortage. Thereupon the surety instituted this suit against the bank and the personal representative of Laine in which the surety alleges, in substance, that having paid the shortage it is subrogated to the rights of the county and state against the bank and the estate of Laine and is entitled to a decree against them for the funds shown to have been misappropriated by Laine and received by the bank when Laine paid his note to the bank in December, 1929.

The evidence in this case is brief and clear. It seems to me that one of the suggestions urged during the trial to the effect that a treasurer who collects and has custody of funds representing taxes due to the state and county is only a debtor in the ordinary sense to the county and state therefor, is rather startling. It is not easy to believe that such is or was heretofore really the law in Virginia, although it is a fact that the practice of handling taxes in the past may have tended to indicate that such construction was placed upon the law by some officials. That in this case the funds in question were public funds belonging to the state and county, respectively, and were held and deposited by the

treasurer in his official capacity for the benefit of the state and county is, I think, established beyond any reasonable doubt. Being public funds, it necessarily follows that the use of any part of them for personal purposes was a misapplication or misuse which rendered Laine and his surety liable to the state and county according to their respective interests in the funds so misapplied.

We then come to consider the questions whether or not the facts and circumstances surrounding the payment of the note of Laine on December 9, 1929, for $10,150 were such as to put the bank on notice of the ownership of the funds which Laine used to pay his note to the bank and whether or not the bank did anything which materially aided or assisted Laine in misapplying those funds.

With reference to the notice which the bank had of the character of the funds, I hardly see that there is any substantial conflict in the evidence on that issue. Here was a county treasurer who in September, 1929, at the beginning of this transaction, had only about $970 to his credit as such in the bank. He went to the bank and borrowed $10,000 through a purely personal loan. I say "personal loan" because in the nature of things it could not have been anything other than a personal loan. I am not aware of any law and none has been suggested in the argument, empowering Laine personally or as treasurer to make a loan of that character for the benefit of the county or state. It is true that the purpose of the loan was to make good a shortage in Laine's account to the county and state, and, that it was, therefore, in a sense for their benefit, yet, as I view it, that fact did not and could not change the true character of the loan from a purely personal one to a loan to or for the benefit of the county or state. Had Laine attempted to obtain a loan from the bank to the county such action on his part would have been without authority and would not in fact have altered the personal character of the transaction. As a matter of fact, however, the loan in question was purely personal in form, substance, and purpose. Laine took the $10,000 and added it to his apparently depleted account which was then down to $970. He personally owed the note to the bank, and he personally obtained all the benefit from the loan, and the bank was careful to require unquestioned collateral security for the full face value of the note.

When the note matured, the bank, knowing how Laine's account as treasurer was kept, with full knowledge of the character of the deposits which Laine made in that account, and with the notice which the check of December 9, 1929, bore on its face —unmistakable earmarks and warnings that the funds in that account were public funds —nevertheless honored the check and accepted it in discharge of Laine's personal note due the bank and thereupon released the collateral which had been deposited as security for the payment of the note.

It is true, as suggested in argument, that the bank could not have prevented treasurer Laine from drawing a check for a similar amount to a third person or from going somewhere else and cashing a check on his treasurer's account. In such a supposed case, the bank not having knowingly aided in the misapplication, and not having full knowledge of the ownership of the funds being used to pay the note, would not be responsible for receiving the funds and applying them to the note as directed by Laine. Such would have been a perfectly good payment, and the bonding company would have to lose the money and be without recourse against the bank; but in the instant case, the bank, although acting in good faith, added materially to the power of Laine. It aided him to get the money by honoring the check and doing something which Laine could not have done; namely, applying the proceeds of the check to the discharge of Laine's personal note due the bank. It gave him a very substantial power which he otherwise would not have had and which he could not have exercised except through the aid and assistance of the bank.

There are probably numerous decisions which turn largely upon the question whether or not a bank rendered aid or assistance to a party in misapplying funds on deposit. Where the bank did nothing to add to the power of the drawer, did not aid or assist him in the misapplication, and received no benefit therefrom, it should not be held liable. But, in the instant case, the transaction could not have been carried out in the manner it was consummated except for the aid of the bank rendered, as stated, in good faith, but nevertheless, with full knowledge of the character of the funds and of the facts and circumstances which unmistakably gave notice to the bank that Laine was taking funds of the state and county and through the assistance of the

bank applying them to the payment of his own personal note due the bank.

Whatever the surety may have done through its agent, the clerk of the circuit court of Isle of Wight county, in allowing Laine, the treasurer, to draw money from his treasurer's account for his personal benefit, such as paying premiums on his treasurer's bond, and other things of that character can scarcely have any material bearing on the case now before the court. This suit involves a single, definite transaction, and, under a well-settled rule of law, when the surety stepped in and paid its liability under the bond as in law it was required to do, it thereby assumed a higher position than it might have occupied under different circumstances. It stepped into the shoes of the county and state against neither of whom the claim that the surety's agent sanctioned the drawing by Laine of checks on his treasurer's account to pay personal debts could by any possibility be a valid defense. There is no evidence that the surety or anyone purporting to represent the surety ever sanctioned or approved the specific misapplication in this case or ever had any knowledge of that misapplication until after the death of treasurer Laine in 1930.

So without prolonging the decision, while I realize it is a hardship on the bank to hold it liable in this case, as I view the situation, it is simply one of those cases where a bank having full knowledge of the real ownership of funds on deposit with it and having notice that the fiduciary who deposited them is seeking to misapply them, nevertheless receives the funds for its own benefit. In such case, when called upon by the injured party or by some one who stands in the injured party's shoes, the bank is required to make good the loss.

A question which was not entirely clear at first, is whether or not the evidence tends to show that on the 9th of December, 1929, the day Laine's note was paid, any part of the $74,000, or thereabouts, which Laine had on deposit in the bank in his treasurer's account, was his personal funds; that is to say, whether or not in fact any part of the $10,150 represented personal funds of Laine. If this were a case in which all of the earmarks indicated that the account was a personal account and that all the funds therein belonged to the depositor personally, I should not hesitate to hold that the burden would be upon complainant to establish by a clear preponderance of the evidence, first, that the funds deposited in the account were in fact the funds of some third person, and, second, that the bank with full knowledge of that fact had aided the depositor in the misapplication of the funds, but that is not the situation in the instant case. In this case, all of the earmarks indicated that the funds in the account in question were the property of the state and county; that Laine held them for the benefit of the state and county in his capacity as treasurer; and that they were not his personal funds. In other words, the facts of which the bank had full knowledge at the time it received this check for $10,150 establish a strong prima facie case of the ownership of such funds by the state and county, which shifts the burden of proof to the defendant to show what part, if any, of the funds to the credit of Laine as treasurer in the bank at the time the $10,150 check was received by the bank in payment of Laine's note, were in fact the personal funds of Laine rather than funds of the state and county. And in view of the fact that Laine is dead and defendants therefore have not the benefit of his testimony, I thought the court ought to be liberal in allowing proof on that issue, if the defendants were in a position to offer any substantial evidence tending to show that any of the funds in the account in fact belonged to Laine personally.

My conclusion, however, is that the evidence offered on that issue signally fails to overcome the burden of proof which rests upon the defendants in this case on that particular issue.

From what has been said above, it follows that a decree for the sum of $10,150 with interest from the proper time will be entered upon presentation in favor of complainant against the bank, and a decree of $10,156.97 will be entered in favor of complainant against the personal representative of W. E. Laine, deceased.

It would seem to follow also that Laine having failed to make any valid payment of his note of September 9, 1929, in that the bank will be required by the decree of the court to refund the $10,150 received, that the bank should have a judgment against Laine's personal representative for the sum of $10,150 with interest thereon from December 7, 1929, until paid.