## Richmond

E. B. JONES, RECEIVER OF THE BANK OF WARM SPRINGS, INC.,
A CORPORATION, AND BANK OF WARM SPRINGS, INC. V.
UNITED STATES FIDELITY & GUARANTY COMPANY.

November 14, 1935.

Present, All the Justices.

The opinion states the case.

*J. M. Perry* and *S. P. Conrad,* for the appellants.

*Apperson, Rush & Gentry,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

Geo. B. Venable was elected treasurer of Bath county in 1912, and continued in office until his resignation on April 1, 1932. Soon thereafter he was found short in his treasurer's accounts and was convicted of embezzlement of public moneys belonging to the State and county.

Venable had likewise been president and director of the Bank of Warm Springs, Inc., from 1915 until its closing on April 30, 1931. During his connection with the bank he kept therein his personal account in the name of "Geo. B. Venable," and his account as treasurer of Bath county in the name of "Geo. B. Venable, Treasurer." In the latter account he deposited State and county funds coming into his hands. During the same period he maintained no treasurer's or personal account in any other bank.

The United States Fidelity & Guaranty Company, the surety on Venable's official bond, settled for his shortage in his public funds. It then instituted this proceeding against the defunct bank and its receiver, alleging, among other things, that the withdrawals from his treasurer's account by Venable were breaches of trust, that the bank aided and abetted Venable therein, and in some instances benefited therefrom, and that it, the surety, having made good these shortages, was subrogated to all the rights of the State and county against the bank for the recovery of the amounts so diverted.

The lower court held the bank liable for six items diverted, totalling $21,244.75, and decreed that the surety was entitled, as a general creditor of the bank, to dividends on such amount. This appeal by the receiver and the bank brings under review the correctness of this decree.

The several items allowed by the decree arose as follows:

Shortly before September 2, 1925, the State accountant began an audit which was to show the condition of Venable's accounts as treasurer as of the close of business on September 5, 1925. In order to square his accounts Venable was due to have in the bank to his credit as treasurer, on September 5, 1925, the sum of $25,784.38. He actually had on hand only $13,980.86, leaving him short to the extent of $11,803.52. Knowing that the auditor would discover this shortage, Venable, on September 2, 1925, transferred $2,500 from his personal account to his treasurer's account. He likewise borrowed $12,000 from the Bank of Warm Springs, Inc., on the personal note of his wife, dated September 5, 1925, payable five days after date, and had the whole of this sum placed to the credit of his treasurer's account. As a result of these two deposits his balance as treasurer at the close of business on September 5, 1925, was $28,480.86, or $2,696.48 more than he owed the State and county.

On September 15, 1925, in accordance with its previous arrangement with Venable, the bank charged Mrs. Venable's personal note, then past due, against his treasurer's account. Since the account contained only $2,696.48 more than Venable owed the State and county, the effect of this was to pay a part of this note, to-wit, $9,303.52, out of his fiduciary moneys. However, as Venable's shortage was, by October 10, 1927, reduced to $7,349.75, this was the net loss to his fiduciary account on this item.

The public funds which came into Venable's hands as treasurer were, of course, the property of the State and its political subdivisions. Venable was but the custodian

thereof. In 22 Ruling Case Law, p. 222, sec. 2, it is said: *"Property in Public Funds.*—Collectors and receivers are but custodians of the public funds coming into their hands. Such moneys remain at all times public moneys, while in their possession or in the hands of their depositaries, and the State or county may maintain an action to recover the same."

See also, *Board of Supervisors* v. *Prince Edward-Lunenburg County Bank,* 138 Va. 333, 347, 121 S. E. 903, 37 A. L. R. 604.

In *Central National Bank* v. *Connecticut Mutual Life Insurance Company,* 104 U. S. 54, p. 66, 26 L. Ed. 693, a leading case on the payment of a personal indebtedness out of trust funds, it is said: "But although the relation between the bank and its depositors is that merely of debtor and creditor, and the balance due on the account is only a debt, yet the question is always open, to whom in equity does it beneficially belong? If the money deposited belonged to a third person, and was held by the depositor in a fiduciary capacity, its character is not changed by being placed to his credit in his bank account."

This in no way conflicts with what was said in *United States Fidelity & Guaranty Co.* v. *Carter,* 161 Va. 381, 170 S. E. 764, 90 A. L. R. 191. There we held that where public funds were deposited in bank by a county treasurer to his credit as such, without anything other than the bank's knowledge of the public character of the funds to establish them as a *special* deposit, the deposit became a *general* deposit and the State and county, as the beneficial owners thereof, were *general creditors* of the bank and entitled to *no preference* in the liquidation of the bank's affairs.

No question of preference is involved in the present suit.

Since the moneys in the treasurer's account were fiduciary funds, Venable had no right to use them to pay his personal debts to the bank. Certainly the bank, knowing the fiduciary character of the funds, had no right to

accept them in satisfaction of its personal claim against Venable.

There is no question but that the bank knew that the account contained fiduciary funds. All of its officers and directors knew that Venable was keeping his public funds there. In 1927, 1928 and 1929, the Auditor of Public Accounts called upon the bank for statements of the funds on deposit with it to the credit of Venable as treasurer of Bath county, and in each instance the bank filed a statement in writing showing the alleged balance on hand. While each certificate falsely stated the balance due, it showed on its face that the bank knew that this was Venable's treasurer's account wherein his public funds were deposited.

■ The deposit by Venable in his treasurer's account of the $2,500 from his personal account, and the $12,000 borrowed through Mrs. Venable, operated as payments by Venable individually to himself as treasurer of the amount necessary to cover his then shortage. These deposits, to the extent of Venable's shortage, became fiduciary funds to take the place of those he had previously embezzled. Thereafter he had no right to use them to pay his wife's debt to the bank.

We dealt with the precise situation in *Aetna Casualty & Surety Co.* v. *Board of Supervisors,* 160 Va. 11, pages, 82, 83, 168 S. E. 617, 640, and there said, through Justice Epes: "The $7,000 and $20,000 notes were Warthen's personal notes, and the money borrowed thereon was his personal money unless and until turned over by him to himself in his official capacity or applied to the payment of warrants drawn by the county. When on March 31, 1927, he deposited the $7,000 he had borrowed to his account as treasurer, this was a turning of it over to himself in his official capacity. When he paid county warrants with the proceeds of the $20,000 loan this was an application thereof to the payment of sums due by him to the county. But the fact that he had applied the money he had personally borrowed on these two notes to the payment of the sums

which he owed the county, did not give him any right thereafter to repay these personal loans out of money belonging to the county which was in his hands as treasurer. If he did so (and it will hereafter appear that he did so), he misappropriated the money so used by him on the dates that he paid these notes."

The bank was held liable to the treasurer's surety under almost the identical circumstances in *Fidelity & Deposit Co.* v. *Bank of Smithfield* (D. C. E. D. Va.), 11 F. Supp. 904.

See also, *Cocke's Adm'r* v. *Loyall,* 150 Va. 336, 342, 143 S. E. 881; *Chase & Co.* v. *Norfolk National Bank,* 151 Va. 1040, 1049, 145 S. E. 725; *Trust Co.* v. *Snyder,* 152 Va. 572, 584, 147 S. E. 234; *Bischoff* v. *Yorkville Bank,* 218 N. Y. 106, 112 N. E. 759, L. R. A. 1916F, 1059; *Allen* v. *Puritan Trust Co.,* 211 Mass. 409, 97 N. E. 916, L. R. A. 1915C, 518; 3 Ruling Case Law, p. 550, sec. 177.

But the receiver and the bank contend that in addition to the above mentioned deposits of $2,500 and $12,000, the treasurer's account contained commissions due to Venable on his collections. They argue that these commissions were the personal funds of Venable, were left in his treasurer's account, were mingled with the tax moneys, and since the evidence does not show what part of the treasurer's balance was commissions and what part was public funds at the time of the alleged misappropriations, it is impossible to say whether the diversions were from Venable's commissions or from the public moneys.

This same argument is made with reference to each of the alleged diversions.

■ The uncontradicted evidence is that at the time each of the diversions was made Venable was short in his accounts to the State and county far in excess of any commissions earned by him during that year. It is obvious, therefore, that he had no personal funds by way of commissions in his treasurer's account. For, as we have already seen, when Venable, being short in his accounts, deposited his personal funds in his treasurer's account this operated as a payment *pro tanto* of his shortage to

the State and county. The personal funds deposited ceased to be his property and became a part of his fiduciary funds. *Aetna Casualty & Surety Co.* v. *Board of Supervisors,* 160 Va. 11, 84, 85, 168 S. E. 617. The same principle applies to the deposit of his commissions. When, being short in his accounts, Venable allowed his commissions to remain in his official account, this operated as a payment *pro tanto* of his shortage. The commissions ceased to be his personal funds and became a part of his fiduciary funds.

The lower court next held the bank liable for three checks drawn on it by the Valley Oil Company and paid out of Venable's treasurer's account.

The evidence discloses that one J. C. McClung, engaged in the gasoline business, became largely indebted to the Bank of Warm Springs, Inc. Thereupon Venable, Byrd and Fertig, three officers and directors of the bank, formed with McClung a partnership, the purpose of which was to continue the gasoline business with the expectation and hope that the profits therefrom might liquidate McClung's indebtedness to the bank.

Prior to September 21, 1928, the Valley Oil Company sent to the Division of Motor Vehicles at Richmond, its check on the Bank of Warm Springs, Inc., for $1,700.25 in settlement of gas taxes due the State. Because of the lack of sufficient funds to the credit of the Valley Oil Company the check was charged to Venable's treasurer's account on September 26, 1928, by Miss Cleek, the assistant cashier, at the direction of Venable and Fertig, the president and cashier, respectively, of the bank. The effect of the transaction was to pay to the bank the over-draft of the Valley Oil Company out of State and county funds.

The same situation is true with reference to the check for $1,829.85, which was likewise made payable to the Division of Motor Vehicles in settlement of gas taxes due. This check was received at Richmond on January 19, 1929, but was not charged to Venable's treasurer's account until January 30th. Thus the bank again collected a

debt due it by the Valley Oil Company out of State and county funds.

On January 6, 1929, the Valley Oil Company sent to the American Oil Company at Baltimore its check for $3,-481.72. The payee attached that check to a draft for the same amount upon the Valley Oil Company and sent both to the Bank of Warm Springs, Inc., for collection. On January 9th, Fertig, the cashier, drew a cashier's check payable at the Bath County National Bank to the order of the American Oil Company for the amount of the check. The Bank of Warm Springs, Inc., thus advanced this sum for the benefit of the Valley Oil Company. Subsequently, on January 30th, at Venable's direction the item was charged against his treasurer's account, by means of which the bank again collected out of State and county funds a debt due it by the Valley Oil Company.

■ Under the principles above laid down the bank was clearly liable for these three items since it participated in and benefited from Venable's misappropriation of public funds.

■ The bank was next held liable for the note of H. T. Jackson, in the sum of $4,882.83, which was charged to Venable's treasurer's account. The bank had been carrying Jackson's note so long without curtail that the Bank Examiner directed that it be charged off as worthless. Accordingly, the note was charged off by a resolution of the board of directors on October 7, 1930. But contemporaneously the directors and Venable verbally agreed that the note should be charged to and paid out of Venable's treasurer's account. Having thus collected its debt against Jackson out of the State and county funds, the bank is likewise liable for this item.

■ On December 2, 1930, the Covington National Bank received the personal check of Venable for $2,000 as a curtail on a note held by it on which Venable and his fellow directors were endorsers. This check reached the Bank of Warm Springs, Inc., for collection the day following and was charged to Venable's treasurer's account. While

Venable testified that he did not direct this check to be charged to his treasurer's account, Miss Cleek, the assistant cashier, testified that the employees of the bank were always particular to get Venable's authority to charge to his treasurer's account any item not drawn thereon.

If Venable's testimony is to be believed, then the check was charged to his fiduciary account without his authority and, of course, the bank should restore the item. If, on the other hand, Miss Cleek's testimony is to be believed, then the bank, in effect, collected a debt due it by Venable personally out of funds which it knew were the property of the State and county and should be charged with the item.

These proceedings having been instituted on November 21, 1932, the receiver and the bank pleaded the three-year statute of limitations (Code, section 5810) to the two items accruing prior to November 21, 1929.

The lower court was of opinion that the bank was guilty of fraudulent concealment which kept the State and county in ignorance of their rights and brought them and their surety within the saving provision of Code, section 5825. By this section it is provided, in part, that if the party invoking the statute of limitations shall "by any other indirect ways or means obstruct the prosecution of such right, the time that such obstruction may have continued shall not be computed as any part of the time within which the said right might or ought to have been prosecuted."

This provision, in substantially its present form, was before this court for interpretation in *Culpeper National Bank* v. *Tidewater Improvement Co.*, 119 Va. 73, 89 S. E. 118. Speaking through Judge Keith, we said (119 Va. 73, p. 83, 89 S. E. 118, 121): "The sole question is whether or not the Culpeper National Bank has been guilty of such obstruction as is contemplated by section 2933 [now section 5825].

"* * * In order to produce that result we are of opinion that it must appear that there was some fraudulent act

participated in by the bank which kept the plaintiff in ignorance of its rights."

We agree with the lower court that there "was some fraudulent act participated in by the bank" which kept the State and county in ignorance of their rights.

We have already seen that in September, 1925, the bank entered into a fraudulent scheme with Venable whereby he was allowed to borrow $12,000 from the bank on his wife's personal note, and deposit the proceeds thereof in his treasurer's account, thus concealing the shortage therein until the audit of his transactions had been completed. If this scheme had not been entered into and carried out, the audit would have disclosed that Venable was more than $9,000 short in his accounts as of September, 1925.

Furthermore, the uncontradicted evidence shows that on four different occasions, namely, on June 7, 1928, February 4, 1929, June 30, 1929, and June 30, 1930, the bank made false certifications in writing to the Auditor of Public Accounts, and through him to the board of supervisors of Bath county, as to Venable's treasury balances in said bank. Had these certifications correctly disclosed the status of Venable's treasurer's account, it is certain that his shortage would have promptly been discovered.

The opinion of the lower court correctly and succinctly sizes up the situation thus: "As long as this bank remained a going concern Venable somehow managed, with its aid, to survive the annual audits. The first time his accounts were audited after that bank closed he was caught short, for through no other bank could he manipulate his treasury account and have such bank make false certifications as to his treasury balances."

But it is further contended that the surety cannot claim the benefit of the saving provision of Code, section 5825, because it, the surety, filed only a general replication to the plea of the statute of limitations, and the defense of fraudulent concealment on the part of the bank was provable only under a special replication. Assuming, but not deciding, that the filing of a special

replication was necessary, this defense should have been made in the lower court. It cannot now be raised for the first time on appeal.

Furthermore, the failure to file a replication is cured by section 6332 of the Code, which provides: "No decree shall be reversed for want of replication to the answer, where the defendant has taken deposition as if there had been a replication; and when it appears that there was a full and fair hearing on the merits, and that substantial justice has been done, a decree shall not be reversed for want of a replication, although the defendant may not have taken depositions; nor shall it be reversed, for any informality in the proceedings, at the instance of a party who has taken depositions."

The United States Fidelity & Guaranty Company, as the surety on Venable's bond, having reimbursed the State and its political subdivisions for the diversion of their trust funds, is entitled by subrogation to recover said amounts from the bank which benefited from the improper withdrawals. 3 Ruling Case Law, p. 551, sec. 179; *Pinckard* v. *Woods,* 8 Gratt. (49 Va.) 140, 147; *Asberry's Adm'r* v. *Asberry's Adm'r,* 33 Gratt. (74 Va.) 463, 471.

Our conclusion is that the judgment of the lower court is correct and should be affirmed.

*Affirmed.*