**BANK OF GILES COUNTY v. FIDELITY & DEPOSIT CO. OF MARYLAND.**

**FIRST NAT. BANK OF NARROWS, VA., v. SAME.**
Nos. 4014, 4015.

Circuit Court of Appeals, Fourth Circuit.
June 8, 1936.

M. P. Farrier, of Pearisburg, Va., and John S. Draper, of Pulaski, Va., for appellants.

Joseph H. Chitwood and Murray A. Foster, both of Roanoke, Va. (Woods, Chitwood, Coxe & Rogers, of Roanoke, Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

Fidelity & Deposit Company of Maryland, surety on the bond of W. W. Walker, as treasurer of Giles county, Va., brought these two suits in equity against the Bank of Giles County and the First National Bank of Narrows, Va., respectively, to secure an accounting to show the deposits and withdrawals by the treasurer of county funds in the banks and to require the banks to pay to the surety, as subrogee of the county, a sum of money equal to the amount of county funds which the banks permitted the treasurer to use in the payment of his personal indebtedness to them. Walker held the office of county treasurer from January 1, 1920, to July 26, 1930, having been elected for successive terms of four years, and having resigned on July 26, 1930; and during this period, the surety was on his official bond. Throughout his holding of the office, he was short of county money which he should have held in his possession and used for the lawful purposes of the county government. At the end of the first year, the shortage was $26,728.12; on December 31, 1923, $42,836.31; on December 1, 1927, $121,-012.83; and at the end, on July 26, 1930, $98,807.27. The last-mentioned sum, with interest, was paid to the county by the surety on January 7, 1931, in liquidation of its obligation under the bond, after a judgment for that amount had been rendered against Walker for the benefit of his successor in office in an action instituted in the county court. Walker was tried for the crime of embezzlement in the county court and acquitted, but no attempt was made in the pending case to deny the existence or amount of the shortages described.

Some of the county funds were deposited in Walker's name as treasurer of the county in the First National Bank of Pearisburg, to whose assets and liabilities the Giles County Bank, one of the appellants herein, succeeded through certain conveyances and contracts. Other county funds were deposited in the name of Walker, as treasurer of the county, in the First National Bank of Narrows, the other appellant herein. Walker also had a personal account in each of these banks.

The substance of the surety's complaint is that each of these banks knowingly permitted Walker to pay his personal indebtedness to it out of county funds which it held as a depository, and thereby became indebted to the county to whose rights the surety became subrogated when it paid the shortage in conformity with the terms of its bond. Two transactions with the Pearisburg bank are relied upon: (1) On August 13, 1925, Walker borrowed $3,000 from the bank on his personal note and had the proceeds credited to the treasurer's account. On December 11, 1925, he paid this note by check drawn on the treasurer's account. (2) On March 3, 1926, Walker borrowed $1,000 from the bank on his personal note and had the proceeds credited to his personal account. Subsequently $500 of this amount was transferred from the personal to the official account. On December 10, 1927, he paid the entire note by check drawn upon the treasurer's account.

Four transactions with the Narrows bank are involved: (1) On April 27, 1923, Walker borrowed $2,500 from the bank on his personal note and had the proceeds credited to the treasurer's account. On April 28, 1923, the bank made a loan of $5,000 to the county and used $2,500 thereof to discharge the personal note of that amount. (2) On June 5, 1925, Walker borrowed $1,500 from the bank on his personal note, and in the same manner borrowed $1,700 on September 5, 1925. In each instance the proceeds of the note were deposited in the treasurer's account. Both notes were paid on November 5, 1925, by check drawn on the treasurer's account. (3) On October 23, 1925, the bank loaned $1,500 on a note of Walker's wife bearing his indorsement and credited the proceeds to the treasurer's account, and on December 4, 1925, this note was paid by check on the treasurer's account. (4) On January 12, 1928, the bank made a loan of $3,548 to the county, from which sum $800 was deducted and deposited to the credit of Walker's personal account.

In addition to these facts, the District Judge found, and his findings are not disputed, that during the entire period covered by these six transactions Walker was short in his accounts and indebted to the county in large amounts in excess of any amount due him for commissions, but that the county officials had no knowledge of the shortage or reasonable grounds to suspect it; and, likewise, that the bank had no such knowledge or reasonable ground for suspicion except in so far as the transactions described might have occasioned suspicion. Evidence introduced on behalf of the banks showed quite clearly that the county officials did not rely on the treasurer to borrow money for the county on his personal credit, but, on the contrary, that the county had ample borrowing power to meet its obligations and actually exercised it to a considerable extent during the period under consideration.

The District Judge reached the conclusions of law, which are not disputed, that the treasurer was under no obligation to honor any warrants or requisitions for county funds drawn by the county officials upon him in his official capacity in excess of the available funds in his hands as treasurer, and that he had no authority to borrow money for county purposes, but that such authority was lodged only in the governing body of the county. The court therefore held that, since the banks loaned the several sums to Walker upon his personal notes, they were in no position to claim, in the absence of evidence that the board of supervisors or other officials of the county had either directed or sanctioned the loans, that the intention was to lend the moneys to the county for county purposes. The very nature of the transactions, it was held, was such as to arouse the suspicion of the banks and put them on notice as to the true nature of the loans. Accordingly, a decree was entered against the Bank of Giles County·in the sum of $4,000, with interest, and against the National Bank of Narrows in the sum of $8,009.68, with interest, from which decrees these appeals were taken.

It will have been observed that in five of these transactions, the two with the Pearisburg bank and the first, second, and third with the Narrows bank, the circumstances were strikingly similar. Walker borrowed money from the bank on his personal note, deposited the proceeds in his account as treasurer, and later paid the note by check on his official account. The bank in each instance contends that it incurred no liability by co-operating with Walker to effectuate the transaction, because the loan was in reality an advancement of money to the county and not a personal loan, so that it was lawful and proper in the end to accept the county funds in final payment of the obligation. Walker's testimony in this respect is relied upon. Speaking of the first $3,000 transaction with the Pearisburg bank, he said in effect that the county school board was doing an unusually large amount of improvement work in 1925 calling for the expenditure of large sums of money; that consequently negotiations between the school board and the banks took place and loans from the banks to the board were arranged and continually made; that, at the time of the transaction in question, county collections were running low, and hence he gave his personal note and had it credited to his official account "with the understanding with the officials of the bank that it was to be paid back out of county funds when collected, which was done." Similar testimony was given by Walker as to the four other transactions in this category; but he did not explain why he, instead of the authorized county officers, borrowed the money.

It is a significant fact that no official of either bank ventured to corroborate this testimony, although Walker was a director of both banks; and, of the other witnesses for the banks, the clerk of the school board in charge of its financial affairs, and the county clerk, who was also ex officio clerk of the board of supervisors of the county, were both directors of the Pearisburg bank. These clerks testified that they had no knowledge or suspicion of Walker's shortage, but they made no attempt to show that Walker was authorized to borrow money for the county, or that the officials of the bank entered into the arrangement described in Walker's defense. Indeed, no other testimony was given to show that the officers of the banks in active charge of their affairs were ignorant of the shortage.

But, if we assume that no one in the banks was aware of the defalcation and that the arrangement between the banks and Walker was made as he tes-

tified, the banks are not absolved from liability to the county or its subrogee. When Walker deposited funds to his credit as treasurer of the county, the banks had notice of the nature of the deposit, and, when they permitted him to pay his personal indebtedness to them by checks upon his fiduciary accounts, they knowingly participated in a breach of trust. It is well established that one who participates in a breach of trust may be held liable in a court of equity either to account for the trust property or its proceeds if still in his possession or to respond in damages if he has parted with them. If, as in this case, the trust property consists of a general bank deposit, the bank does not thereby become a trustee of the money. The relation of debtor and creditor is established between the bank and the fiduciary, and the bank may safely honor the depositor's checks and allow withdrawals from the fund so long as it has no knowledge of misconduct on the part of the depositor. Bank of Vass v. Arkenburgh (C.C.A.) 55 F.(2d) 130; Empire Trust Co. v. Cahan, 274 U.S. 473, 47 S.Ct. 661, 71 L.Ed. 1158, 57 A.L.R. 921; Fletcher v. Sharpe, 108 Ind. 276, 9 N.E. 142; Officer v. Officer, 120 Iowa, 389, 94 N.W. 947, 98 Am. St.Rep. 365; Brown v. Sheldon State Bank, 139 Iowa, 83, 117 N.W. 289; Phillips v. Bank, 98 Kan. 383, 158 P. 23, L. R.A.1917A, 680; Paul v. Draper, 158 Mo. 197, 59 S.W. 77, 81 Am.St.Rep. 296; City of Sturgis v. Meade County Bank, 38 S.D. 317, 161 N.W. 327; Perry on Trusts (6th Ed.) § 122; 7 Corpus Juris, 633, 644, 645; Lowndes v. City National Bank, 82 Conn. 8, 72 A. 150, 22 L.R.A.(N.S.) 408; Miami County Bank v. State, 61 Ind.App. 360, 112 N.E. 40; Atwood-Stone Co. v. Lake County Bank, 38 S.D. 377, 161 N.W. 539; Evans v. Evans, 82 Iowa, 492, 48 N.W. 929; Young v. Teutonia Bank & Trust Co., 134 La. 879, 64 So. 806; Eyrich v. Capital State Bank, 67 Miss. 60, 6 So. 615; 1 Morse on Banks and Banking (5th Ed.) § 317; Gray v. Johnson, L.R. 3 H.L. 1 (1868); Havana Central R. R. Co. v. Central Trust Co., 204 F. 546, L.R.A.1915B, 715. See Restatement of the Law of Trusts, § 324, Comments f and g.

■ On the other hand, if the bank is a creditor of the depositor individually, as in the case of an overdraft by, or a loan to, the depositor, it may not set off the deposit standing in the name of the fiduciary or accept a check thereon in payment of the individual debt. The governing principle is that, under such circumstances the bank is charged with notice that the payment is presumptively wrongful, and must refund the money to the cestui que trust, if it turns out that it has in fact participated with the fiduciary in a breach of trust. The broad rule as to depositories of trust funds and its application to the use of funds on deposit in the payment of the trustee's personal indebtedness to the depository is set out in the Restatement of the Law of Trusts as follows:

"Sec. 324. If the trustee deposits trust funds in a bank, the bank is liable for participation in the breach of trust in receiving or in permitting the trustee to withdraw the trust funds, where the trustee commits a breach of trust in making the deposit or withdrawal, if, but only if, the bank received the deposit or permitted the withdrawal with notice of the breach of trust. * * *

"h. *Payment of the trustee's personal indebtedness to the bank.* If a bank in which trust funds have been deposited accepts in payment of a personal indebtedness of the trustee to the bank a check payable out of the trust fund, the bank is liable for participation in the breach of trust if, but only if, it had notice that trust funds were being so used (See Sec. 322).

"Thus, if the bank accepts in payment of the trustee's personal indebtedness to the bank a check drawn in breach of trust upon the trustee's account as such in the bank, the bank is liable for participation in the breach of trust."

See, also, Central Natl. Bank v. Conn. Mut. Life Ins. Co., 104 U.S. 54, 26 L.Ed. 693; Union Stock Yards Bank v. Gillespie, 137 U.S. 411, 11 S.Ct. 118, 34 L.Ed. 724; U. S. F. & G. Co. v. Adoue, 104 Tex. 379, 137 S.W. 648, 138 S.W. 383, 37 L. R.A.(N.S.) 409, Ann.Cas.1914B, 667; Washbon v. Bank, 87 Kan. 698, 125 P. 17; State Bank v. McCabe, 135 Mich. 479, 98 N.W. 20; Hale v. Windsor Savings Bank, 90 Vt. 487, 98 A. 993; Ward v. City Trust Co., 192 N.Y. 61, 84 N. E. 585; Bischoff v. Yorkville Bank, 218 N.Y. 106, 112 N.E. 759, L.R.A.1916F, 1059; Fidelity & Deposit Co. v. Rankin, 33 Okl. 7, 124 P. 71; Brovan v. Kyle, 166 Wis. 347, 165 N.W. 382; 1 Morse on Banks and Banking (5th Ed.) § 317;

First Natl. Bank v. Green (Ky.) 114 S. W. 322; Jones v. U. S. F. & G. Co. (Va.) 182 S.E. 560; Fidelity & Deposit Co. v. Bank of Smithfield (D.C.) 11 F.Supp. 904; Mass. Bonding & Ins. Co. v. Standard Trust & Savings Bank, 334 Ill. 494, 166 N.E. 123; Cocke's Adm'r v. Loyall, 150 Va. 336, 143 S.E. 881; Chase & Co. v. Norfolk Natl. Bank, 151 Va. 1040, 145 S.E. 725; Trust Co. v. Snyder, 152 Va. 572, 147 S.E. 234; Fidelity & Deposit Co. of Md. v. Farmers Bank (C.C.A.) 44 F.(2d) 11; 4 Bogert Trusts, § 907. For cases in which the question has been complicated by the fact that the trust funds were mingled with the individual funds of the fiduciary in an account in the individual name, see Md. Casualty Co. v. City Natl. Bank (C.C.A.) 29 F.(2d) 662; Fidelity & D. Co. v. Highland Trust & Savings Bank (C.C.A.) 44 F.(2d) 697; Conqueror Trust Co. v. F. & D. Co. (C. C.A.) 63 F.(2d) 833; U. S. F. & G. Co. v. Union Bank & Trust Co. (C.C.A.) 228 F. 448; Allen v. Puritan Trust Co., 211 Mass. 409, 97 N.E. 916, L.R.A.1915C, 518.

Without gainsaying these general principles, the defendants assert that they are not applicable to the peculiar circumstance common to the five items under consideration because in each instance the money loaned to the individual was actually deposited in the treasurer's account and presumably used for county purposes. In the second transaction with the Pearisburg bank involving a loan of $1,000 only $500 went into the treasurer's account, so that the bank is liable for $500 in any event under the rule just stated. But the balance of $500 and all of the sums involved in the other four transactions found their way into the county deposit. Does it follow, as the banks contend, that these loans were loans to the county properly payable out of county funds? We think not. The power and authority to borrow for the county was not lodged in the county treasurer, but generally in the board of supervisors of the county under section 2727 of the Virginia Code of 1924. See, also, the same section in the Code of 1930 and the provision as to the borrowing of funds by counties in the Code of 1930, Constitution Appendix, section 115a. The county school board has special authority to borrow funds under section 681a and 644c of the Code of 1924 and section 675 of the Code of 1930. The banks were bound to take notice of this limitation upon the treasurer's authority, and hence they had knowledge that Walker was acting outside the scope of his official duty when he told them that he was borrowing money for public purposes to be paid back when the subsequent collections would put the county in funds. The legal situation is well described in the following quotation from Town of East Hartford v. American National Bank, 49 Conn. 539, in which similarly a town treasurer borrowed money without authority on his official notes from the bank and later paid the notes with his official checks; the bank having no knowledge that the treasurer was misappropriating the funds of the town. The court said (49 Conn. 539, at page 552):

"As the bank must be held to have known that the treasurer was not authorized to borrow money for the town, paying his overdrawing checks and discounting the notes were each loans by it to him as an individual. By lending to an officer whose office conferred no power to borrow, the bank cannot force itself into the position of a creditor of the town against its will and without its knowledge; and the payment of its debts by the unauthorized act of the treasurer from money thus borrowed is not an appropriation of it by the town to its uses; it had previously placed money in his hands for the payment of those specific debts; there remained to it upon knowledge the right to repudiate the unauthorized borrowing and payment; the right to remain in debt, with its creditors' permission; not having that, the right to borrow for itself. Upon such repudiation the transaction remains the lending by the bank to the agent for himself; the money borrowed remains his own; the duty to repay solely upon him; the right of the bank to recover, solely from him. The bank had notice as to the time when, and as to the character of the checks by which, the treasurer withdrew his deposit with it of the money loaned to and borrowed for himself; it knew when it was exhausted; it knew when after such exhaustion he again as a duly authorized agent deposited with it money belonging to the town; and it knew the payment of his debt to it to be from that; knew it to be unauthorized and of course illegal. The intentional reception of this money upon a private debt was burthened with an obligation to return it upon demand."

See, also, Custer County v. Walker, 10 S.D. 594, 74 N.W. 1040; U. S. F. & G. Co. v. Adoue, 104 Tex. 379, 137 S.W. 648, 138 S.W. 383, 37 L.R.A.(N. S.) 409, Ann.Cas.1914B, 667; Farmers' & Traders' Bank v. F. & D. Co., 108 Ky. 384, 56 S.W. 671; Fidelity & Deposit Co. v. Bank of Smithfield (D.C.) 11 F.Supp. 904. Compare Anderson v. Walker, 93 Tex. 119, 53 S.W. 821.

In Fifth National Bank v. Village of Hyde Park, 101 Ill. 595, 40 Am.Rep. 218, on which the appellants particularly rely, the decision was based in the belief reasonably entertained by the bank, that the money advanced by it to the village treasurer was to be used for the county, and the question of the treasurer's authority to borrow on behalf of the county was not discussed. In our opinion, this question is vital and may not be disregarded.

Giles county would have had no need for funds on any of the occasions mentioned in the pending case if it had not been for Walker's defalcation. The money which he borrowed and placed in his treasurer's account replaced but a small part of that which he had previously misappropriated, and the co-operation of the bank only enabled him the more readily to conceal his wrongful acts. Innocent though the banks were of 'fraud, they are responsible to the extent to which they lent their aid to an illegal course of dealing. In legal effect as well as in outward form, the loans must be considered as personal loans to Walker, paid without legal warrant or authority out of the funds of the county.

■ In our opinion, the District Judge was also correct in holding that the Narrows bank is liable for the sum of $800 covered by the fourth transaction between it and the county treasurer. It is admitted that the bank made an official loan to the county of $3,548 upon a school warrant or draft discounted at the request of the treasurer by the bank, and that the bank deducted $800 from the net proceeds of the draft and deposited it in Walker's personal account. The only defense or explanation of this diversion of the fund is the uncorroborated testimony of Walker that he requested the cashier to credit him with $800 as part of his commissions. Walker had the right to take the commissions earned by him out of the cash funds in his possession or out of the

funds on deposit in the treasurer's account; and the bank would have incurred no liability for honoring a check payable to him individually in the absence of further circumstances known to it indicating that the treasurer was committing a breach of trust. See Restatement of the Law of Trusts, § 324 (d).

The bank contends that in effect the transaction was the same as if the entire amount of the loan had been credited to the treasurer's account and the treasurer had then drawn his check for $800 payable to himself individually; but the court held, we think properly, that on its face the transaction was so irregular as to charge the bank with notice of the breach of trust. The details of the arrangement for the loans between the county and the bank are not set out in full in the record, but the only reasonable inference from the facts disclosed is that the money was borrowed by the county for county purposes with the manifest intention that the proceeds would be placed to the treasurer's credit. When the bank departed from the course designed, it took the first step in the spoilation of the trust. It knowingly participated in the diversion of county funds to a personal use, and it was not reasonable for it to accept as a fact the explanation that the county was borrowing money to pay commissions to its treasurer. There were no commissions due the defaulter at the time, and the deposit to his credit was in fact a breach of trust.

In material respects, the transaction was similar to that considered in Duckett v. National Mechanics' Bank, 86 Md. 400, 38 A. 983, 39 L.R.A. 84, 63 Am.St.Rep. 513, where the bank improperly credited to the personal account of one Clagett the proceeds of a check payable to him as trustee, and it was held that the bank was liable as a participant in a breach of trust for the loss occasioned by Clagett's subsequent defalcation, although the bank was innocent of his final disposition of the funds. The court said (86 Md. 400, at page 410, 38 A. 983, 986, 39 L.R.A. (N.S.) 84, 63 Am.St.Rep. 513):

"It is no answer to say that had the bank obeyed the direction given to it, and had it opened an account in the name of Clagett as trustee, and credited that account with these funds, still Clagett could have withdrawn them on checks appropriately signed, and could then have

misapplied the money without involving the bank in any liability. This is no answer, simply because what might have been done was not done. Had the bank opened the account for this fund in the name of Clagett, trustee, instead of entering the credit to his personal account, it would have done what it was its plain duty to do, and it would not have been guilty of the error which it did commit. Had it done its duty, and had Clagett afterwards withdrawn the money, as he might have done, and had he then misapplied it without the co-operation of the bank, there would have been no liability incurred by the bank at all. But this was not done, and the failure of the bank to do what it ought to have done cannot be treated as tantamount to the thing that it did do, unless contraries are equivalents of each other. What it ought to have done is not what it did do, and it cannot escape liability upon the mere conjecture that what did happen to the funds might have also happened had the bank not been derelict in its dealings with those funds."

See, also, Blanton v. First National Bank, 136 Ark. 441, 206 S.W. 745; Oklahoma State Bank v. Galion Iron Works & Mfg. Co. (C.C.A.) 4 F.(2d) 337; Restatement of Trusts, § 314 (e).

There is no substance in the defenses of estoppel and limitations. There were no misrepresentations by the county and no holding out from which the banks could assume that Walker had authority to engage in the dealings complained of, and, while greater diligence on the part of the officials of the county might have disclosed his misconduct at an earlier date, they had neither knowledge nor suspicion of his misdeeds. See Allen v. Puritan Trust Co., 211 Mass. 409, 97 N.E. 916, L.R.A.1915C, 518; Oklahoma State Bank v. Galion Iron Works & Mfg. Co. (C.C.A.) 4 F.(2d) 337. Since the county was ignorant of the misuse of its funds and the banks were participants in the breaches of trust, limitations did not run in their favor in the absence of laches on the part of the county, and laches is not shown by the evidence in the pending case. See Restatement of the Law of Trusts, § 327 (2).

The decrees of the District Court are affirmed.