## OKLAHOMA STATE BANK v. GALION IRON WORKS & MFG. CO.

(Circuit Court of Appeals, Eighth Circuit. January 28, 1925.)

No. 6553.

1. **Banks and banking ⊕130(3)—Bank is liable for knowingly permitting agent to control funds of principal.**

A bank which, with knowledge that funds belong to a principal, permits an agent to deposit them to his own credit and withdraw them by his individual checks for his own uses, is liable to the principal if the agent embezzles the funds, unless he acted within the apparent scope of his authority, or the principal, with knowledge of his acts, permitted or ratified the same.

2. **Estoppel ⊕52—Requisites of equitable "estoppel," stated.**

To constitute an "estoppel," in the absence of false representations by the party sought to be estopped, he must have been guilty of such conduct as to have given the person pleading the estoppel reason to believe that a state of facts existed inconsistent with those now asserted against him and in reliance on which he acted.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estoppel.]

4 F.(2d)—22

3. **Banks and banking ⊕154(8)—Plaintiff held not estopped to assert liability of bank for sums embezzled by its agent through unauthorized acts of the bank.**

Evidence *held* to show that plaintiff had no knowledge that defendant bank was discounting warrants payable to plaintiff on indorsement by its agent, placing the proceeds to the credit of the agent and permitting him to withdraw the same on his personal checks, and that plaintiff was not estopped to assert defendant's liability for the amount in that manner embezzled by the agent.

4. **Interest ⊕12—On recovery for money converted or due on an implied contract, plaintiff is entitled to interest.**

On recovery on an implied contract for payment of money or for conversion of money, plaintiff is entitled to interest.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action at law by the Galion Iron Works & Manufacturing Company against the Oklahoma State Bank. Judgment for plaintiff, and defendant brings error. Affirmed.

This is a writ of error to reverse a judgment in favor of the plaintiff on a directed verdict. The action is for a conversion of the proceeds of warrants later set out more fully. The parties will be referred to as they appeared in the court below.

The material facts, briefly stated, are: The plaintiff is a manufacturer of road building machinery in Galion, Ohio, where all its officers and general offices are located, and all its business transacted, except the sale of machinery, which was done by its sales agents, under the control of one C. J. Boyd, its sales manager in Enid, Okl., where plaintiff maintained an office for the purpose of selling road machinery. It sold its machinery to township boards and boards of county commissioners in the state of Oklahoma. The machinery purchased by the county commissioners was paid for, after delivery and approval of the purchases, by the issuance of county warrants on the county treasurers, and those bought by the townships by warrants on the township treasurer. Mr. Boyd, when receiving these warrants, was required to transmit them to the home office at Galion, Ohio, and the company would collect them, when funds in the respective treasuries to pay them were available. If no funds to pay these warrants were available on presentation, the treasurer on whom they were drawn would indorse them that they were not paid for want of funds, and thereupon the warrants would bear interest at the rate of 6 per centum per annum until paid.

Boyd indorsed a number of these warrants in the name of the company; discounted them with the defendant, and had the proceeds placed to his individual credit, subject to his check for any purpose he saw proper to draw for, and appropriated the proceeds, amounting to the sum for which the jury returned a verdict in favor of the plaintiff by direction of the court, to his own use; in short, embezzled the money. The discounting of the warrants by Boyd, placing the proceeds to his individual credit, and drawing the deposits by his individual check for his own use, and embezzling the funds drawn, are claimed by the plaintiff to have been without its authority or knowledge. The original claim was for the proceeds of 30 warrants, which are all set out in separate counts. At the trial 2 of the counts were dismissed by the plaintiff, and the verdict was for the amounts claimed in the remaining 28 counts, with interest. Defendant in its answer, in addition to a general denial, alleged that Boyd was the managing officer in charge of plaintiff's office at Enid, Okl., and that ever since January, 1918, to July, 1921, he indorsed these warrants in plaintiff's name, received the money thereon from various banks, and remitted from time to time to the plaintiff the proceeds, all of which was well known by the plaintiff, which from time to time received the proceeds of said warrants, well knowing they could not have been cashed without the indorsement of Boyd, made no objections to defendant or informed it of any lack of authority of Boyd to indorse or cash these warrants. That at various times, Boyd, after cashing the warrants at defendant's bank, purchased from it certificates of deposit, which he transmitted to plaintiff at its home office, and in due course were collected by the plaintiff through other banks, well knowing that its warrants had been indorsed by Boyd in its name, and purchased by defendant.

That on June 30, 1921, plaintiff discharged Boyd, and for the first time notified defendant that he was no longer in its employ, and that plaintiff then knew that the only transactions Boyd ever had with the defendant was to discount and cash said warrants. It then pleads an estoppel by reason of the facts set out.

The plaintiff in its reply denies the several allegations in the answer.

W. O. Thomas, of Kansas City, Mo. (Dyer & Keim, of Enid, Okl., and C. O. Blake, of El Reno, Okl., on the brief), for plaintiff in error.

J. D. Lydick, of Oklahoma City, Okl. (H. J. Sturgis, of Enid, Okl., and McPherren & Wilson, of Oklahoma City, Okl., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and TRIEBER and PHILLIPS, District Judges.

TRIEBER, District Judge (after stating the facts as above). The assignments of errors as set out in the brief of defendant are:

(1) That the court erred in directing a verdict for the plaintiff, as there was substantial testimony warranting a verdict for the defendant and thereby depriving it of a trial by jury.

(2) That the amount directed was for a larger sum than the evidence warranted.

(3) That the court erred in instructing the jury to include interest in the verdict.

The fourth assignment complains of the exclusion of certain evidence offered by the defendant. This assignment does not comply with rule 24 of this court, and for this reason cannot be considered by this court, as has been so many times decided by us.

The substantial errors, on which counsel for the bank in their briefs and oral arguments rely, are:

1. That Boyd had apparent authority, by reason of the facts and circumstances surrounding his dealings with the bank, as established by the evidence, to indorse the warrants in plaintiff's name, and have the proceeds placed to his individual credit; that his dealings with the bank relating to the transactions in controversy were known to the plaintiff for over two years, and never objected to, nor notice given to the bank that Boyd had no such authority, and therefore it is claimed that the plaintiff is estopped to challenge Boyd's and the bank's acts.

Whether Boyd had authority from plaintiff, either express or by implication, to indorse the warrants, which were payable to the plaintiff, in its name, it is unnecessary to determine. The issue in this case is whether, assuming there was such authority, could the bank permit him to deposit the funds received for them in his own name and withdraw them by his individual check for his personal uses?

[1] That an agent may not deposit funds collected by him for his principal with a bank to his own individual credit, and draw them for his own personal and private use, in the absence of authority from his principal is well settled, and when a bank with knowledge that its funds belong to the principal and not the agent, which was apparent.

from the face of the warrants, permits him to do so, it is liable to the principal for the moneys, thus deposited and withdrawn by the agent on his individual check and by him converted to his own use, and embezzled, unless the agent acted within the apparent scope of his authority, which is not claimed, or the principal, with knowledge of the acts of the agent permits him to do so, or ratifies his acts. Union Stock Yards Nat. Bank v. Gillespie, 137 U. S. 411, 11 S. Ct. 118, 34 L. Ed. 724; McNulta v. West Chicago Park Com'rs, 99 F. 900, 40 C. C. A. 155; Chicago, Rock Island & Pacific Ry. v. Chickasha National Bank, 174 F. 923, 98 C. C. A. 535, decided by this court; United States F. & G. Co. v. Union Bank & Trust Co., 228 F. 448, 143 C. C. A. 30; Security Bank & Trust Co. v. Geren (C. C. A.) 288 F. 317 (5th Ct.); Richmond Guano Co. v. E. I. Du Pont de Nemours & Co. (C. C. A.) 284 F. 803 (4th Ct.); Carroll County Bank v. Rhodes, 69 Ark. 43, 63 S. W. 68; Knoxville Water Co. v. East Tennessee National Bank, 123 Tenn. 364, 131 S. W. 447; Kansas City Casualty Co. v. Westport Avenue Bank, 191 Mo. App. 287, 177 S. W. 1092; 7 Corp. Jur. § 333, p. 644; 3 Rul. Case Law, p. 177.

Was the plaintiff estopped from denying this authority of Boyd as contended on behalf of defendant?

[2] To constitute an estoppel, in the absence of false representations by the party sought to be estopped, he must have been guilty of such conduct as to lead the person, pleading the estoppel, to have reasonable cause to believe that the agent, in this instance Boyd, had authority from plaintiff to receive the money therefor, and have it placed to his own individual credit and withdraw it by his personal check for any purpose he may desire, and for his private use.

Is there any substantial evidence that the plaintiff had knowledge of these dealings between Boyd and the defendant, either express or implied, and by its conduct and silence led the defendant, in the exercise of a reasonable judgment, to believe that Boyd had that authority and it acted on it to its detriment?

As stated by this court in Central Improvement Co. v. Cambria Steel Co., 210 F. 696, 718, 127 C. C. A. 184, affirmed 240 U. S. 166, 36 S. Ct. 334, 60 L. Ed. 579:

"The indispensable elements of an 'estoppel in pais' are: (1) Intentional or reckless misrepresentation of a known and material fact inconsistent with the subsequent claim of him who makes the misrepresentation; (2) ignorance of the truth and absence of equal means of knowledge of it by the party who claims the estoppel; (3) action by the latter induced by the misrepresentation; and (4) injury to the latter if the truth is permitted to be proved. Bigelow on Estoppel (4th Ed.) p. 679; Illinois Trust & Sav. Bank v. City of Arkansas City, 76 F. 271, 293, 22 C. C. A. 171, 193, 34 L. R. A. 518; Farmers' & Merchants' Bank v. Farwell, 58 F. 633, 638, 639, 7 C. C. A. 391, 396, 397; New York Life Ins. Co. v. McMaster, 87 F. 63, 66, 67, 30 C. C. A. 532, 535, 536."

To the same effect are Bailey v. Lisle Mfg. Co., 238 F. 257, 152 C. C. A. 3 (C. C. A. 3), and numerous other authorities.

[3, 4] As there is no evidence whatever that the plaintiff had actual knowledge of Boyd's dealings with the bank, so far as they related to the matters in issue, the defendant relies on an implied knowledge, based on the fact that it claims that remittances for warrants, collected by Boyd, were made by cashier's checks of the defendant, and in many instances by checks or drafts of Boyd on it. There were four checks drawn by Boyd in favor of plaintiff during the three years the acts complained of were committed. One of these was drawn by Boyd on September 4, 1919, for $24.85, marked, "For interest on Order No. 83893." Another was drawn September 20, 1918, for $32, but it does not state for what purpose. Third was a draft by Boyd, on the bank for $1,108.82, drawn at Galion, Ohio, on October 21, 1919; and one on April 1, 1921, for $103.20, also at Galion.

The check for $1,108.82 drawn at Galion, while Boyd was there, was for a warrant, but whether he had collected or discounted it with the bank is not shown. As he paid for it, the plaintiff probably paid no attention how it was paid. As this draft was drawn after the correspondence between the parties, later referred to, it certainly cannot be claimed as a ground for estoppel. This also applies to the check for $24.85. The draft for $103.24 was drawn while Boyd was in Galion, Ohio. Whether he drew it for his personal expenses or for a warrant is not shown, but most likely for expenses of his trip to Galion, as this was only three months before his discharge from plaintiff's employ.

On the other hand, the correspondence between the plaintiff and defendant established beyond question that the plaintiff had at no time knowledge, either actual or implied, that Boyd was permitted by the bank to deposit moneys, for warrants belonging to the plaintiff, to his individual account and withdraw them for any purposes he desired, most

of it evidently for his individual use, as he never accounted for their proceeds to the plaintiff.

The correspondence between the parties began after receipt of a letter by the plaintiff from Boyd dated February 15, 1919. After receipt of this letter by the plaintiff, the following correspondence was had by it and the defendant:

"The Galion Iron Works & Mfg. Co.

"Manufacturers of

"Road Machinery and Culvert Pipe.

"Galion, Ohio, March 4, 1919.

"The Oklahoma State Bank, Enid, Oklahoma—Gentlemen: Attention Mr. Lentz, President. We are in receipt of a letter under date of February 25th from our Mr. C. J. Boyd, manager of sales at our Enid office, which conveys the information that he had an interview with you relative to handling our Oklahoma township and county warrants. He states that you would handle these items if we would open an account with you and deposit these warrants, receiving credit for same, and in turn have a checking account in your bank.

"In this connection we might state that nearly all of our business in Oklahoma is transacted with townships and counties. The bills are all paid in accordance with terms 'by warrants' which, of course, have no due date but are registered and bear 6 per cent. interest from date of registration and are paid all the way from 30 days to 6 months. The treasurer of the township or county usually notifies our Enid office when the items should be sent forward for collection. This is an advantage as you would receive the information from your own city instead of from the home office.

"In all the years of our business career in the state of Oklahoma, we have never had one of these items disputed or lost any of the interest on any of the warrants, but the laws and conditions are such that when the items are issued they cannot place a due date on same until the treasurer has funds in his possession, at which time payment will be made.

"Our business is increasing from year to year in the state of Oklahoma and we feel that this would make a very nice account for you. However, we believe that you should handle these warrants at their face value which would make you a 6 per cent. investment on all items received from us.

"We wrote our Mr. C. J. Boyd to go further into details with you regarding this matter and trust you will come to some definite conclusion in handling this matter at which time we would like to hear from you, either direct or through our Mr. Boyd.

"If the account can be handled as above outlined, we have quite a few warrants which can be forwarded for deposit.

"It is also understood that you are to furnish us a check book with our company's name printed on each check, all checks to be drawn against the bank by our home office.

"Trusting we may hear from you at an early date, we remain,

"Yours very truly,

"The Galion Iron Works & Mfg. Co.,

"F. W. Faber, Secretary-Treasurer."

"Enid, Okl., March 8, 1919.

"Mr. F. W. Faber, Secretary, Treasurer, Galion Iron Works, Galion, Ohio—Dear Sir: I received your letter of the 4th inst., and have had an interview with Mr. C. J. Boyd, your representative in this city. Mr. Boyd estimates that the business in Oklahoma during the coming year will aggregate $150,000.00. I do not know what discount you have been paying but suspect it is in excess of 2 per cent. considerably. Figuring the rate of 2 per cent. the discount you will pay during the year will be $3,000.00. After giving the matter consideration I am prepared to make you this proposition: We will take your warrants at par after they have been registered and drawing interest at the rate of not less than 6 per cent.; in return for this you to carry a balance with us of one-half the amount of the warrants which we are carrying for you. Mr. Boyd can check the warrants which we have on hand and can advise you from time to time the total of the same. While we expect to be prepared to handle all of your warrants under this arrangement it is a matter of business to place a limit on the amount we might handle at one time and we would be willing to fix the maximum at $50,000.00.

"Now, let's see how it figures out under this arrangement: Suppose you did have the maximum of $50,000.00 all of the time and that your balance was $25,000.00 and that you had to borrow this $25,000.00 to carry with us, the interest for the year at 6 per cent. would be $1,500.00 or a saving of $1,500.00, figuring your discount at $3,000.-00 for the year.

"We will supply you with the printed checks as you suggest. I am inclosing a sample of the checks which we are furnishing to our customers. If this form is not satisfactory we can have one made to order.

"I am inclosing a copy of our last printed

statement and shall be glad to have you send me one of your financial statements.

"Under the arrangement suggested above Mr. Boyd can deposit the warrants and other cash items here. We can give him a duplicate ticket for each deposit made, which ticket he can send to you. I shall be glad to hear further from you concerning the matter.

"Yours truly, N. R. Lence, President."

Galion, Ohio, March 14, 1919.

"Oklahoma State Bank, Enid, Okl.—Gentlemen: Attention Mr. W. R. Lence, Pres. We have your favor of the 8th in which you set forth the manner in which you are able to handle the Oklahoma warrants which we take in payment of goods sold.

"We note that you accept these warrants at par, the same to be entered on deposit with your bank and we in turn to have the privilege of checking against our account, keeping as a balance 50 per cent. of the warrants uncollected by you.

"This portion of your arrangement does not appeal to us. However, we thoroughly understand that it would be necessary and we naturally would have a credit balance with your bank at all times providing we open the account. In connection with carrying the balances, we wish to have a free hand and we would, undoubtedly, have a very good balance at all times or would average such as we would carry our account large enough to check against the same to pay for steel sheets which we are purchasing for our Kansas City Branch as we are manufacturing corrugated pipe at that place.

"If you can see your way clear to handle the account in the manner as above stated, we will be pleased to forward you the warrants which we have on hand at the present time.

"Yours very truly,
"The Galion Iron Works & Mfg. Co.,
"F. W. Faber, Secretary-Treasurer."

"April 3, 1919.

"Mr. F. W. Faber, Sec-Treas., Galion Iron Works, Galion, Ohio—Dear Sir: This is to acknowledge receipt of your letter of the 26th ult., inclosing warrants aggregating $5,-110.55.

"We would not want to buy these warrants at 2 per cent. discount for an investment, and our only object in accepting your proposition was to get part of your business. The discount at 2 per cent. is $102.20. We have credited your account with the balance, viz. $5,007.85. I am inclosing duplicate deposit ticket for that amount. If this is not satis-

factory please return the deposit ticket and we will return your warrants to you.

"I am also inclosing a supply of checks. We would like very much to have you do business with us and if you want a supply of checks we shall be glad to print them without expense to you.

"If we take your warrants at 2 per cent. discount we would not expect you to bind yourselves to carry any minimum balance. I believe that it would be to our mutual interest for you to open an account with us, under these conditions, and we shall be glad to render you any service consistent with good banking.

"Yours very truly,        President."

"Galion, Ohio, March 26, 1919.

"Oklahoma State Bank, Enid, Okl.—Gentlemen: Attention Mr. W. R. Lence, Pres. We have your telegram of even date, in which you state that you will accept the warrants as per our letter of the 24th.

"Although you state that you will credit our account with the proceeds and send us printed checks, which are the same as St. Louis Exchange, in this particular transaction we would prefer your cashier's check to cover the amount of warrants.

"We are inclosing herewith the warrants properly indorsed; also a list of same.

"We are also sending our Enid office a list of these warrants so when they are notified by the treasurers of various counties that the items will be paid, they can in turn notify you immediately.

"We feel that these warrants we are forwarding you will be paid before July 1, 1919, at least from the information that we have on hand, they will not run much longer than that date.

"Hoping to receive your remittance on receipt of this letter, we remain,

"Yours very truly,
"The Galion Iron Works & Mfg. Co.,
"F. W. Faber, Secretary-Treasurer."

"April 5, 1919.

"Oklahoma State Bank, Enid, Okl.—Gentlemen: We are in receipt of your letter of April 3d with inclosed deposit memorandum for the warrants mailed you March 26th. This, however, is not in accordance with our letter of March 26th, inasmuch as we allowed you an additional 2 per cent. in connection with the accrued interest on the items forwarded to you.

"In turn we expected your cashier's check or draft to cover the amount of the warrants. Since you understand the matter differently, we are inclosing herewith the de-

posit memorandum and desire you to forward our warrants by return mail (registered), unless it will be convenient for you to forward us your draft.

"Yours very truly,

"The Galion Iron Works & Mfg. Co.,

"Secretary-Treasurer."

All of the warrants in controversy were discounted and deposited after the letter from plaintiff on April 5, 1919, and with one or two exceptions the deposits to Boyd's credit were made in 1920 and 1921.

This correspondence establishes conclusively that the plaintiff declined to deposit with the defendant bank, but in order to secure this deposit, notwithstanding plaintiff's refusal, the defendant permitted plaintiff's funds to be deposited in the name of Boyd, permitted him to withdraw them for his own use, and thereby enabled him to embezzle plaintiff's money. Upon these facts, there can be no estoppel, and the court was right in directing a verdict for the amount embezzled by Boyd, enabled by the wrongful act of the defendant.

Nor did the court err in allowing interest on the amounts due. Whether the bank is liable on an implied contract or for a conversion is immaterial. If the liability is placed on an implied contract to repay the money to the party to whom it belonged, by reason of its wrongful acts, the plaintiff is certainly entitled to interest for the time it was deprived of the use of its money. If it is liable for a tort, then in the language of the Supreme Court in Jones v. United States, 258 U. S. 40, 49, 42 S. Ct. 218, 220 (66 L. Ed. 453): "But when the wrong consists of depriving the owner of property having a definite or ascertainable value there would seem to be the same reason for allowing interest as if there had been a misappropriation of money."

The judgment is affirmed.