**FEDERAL SAVINGS & LOAN INS. COR-
PORATION v. KEARNEY TRUST CO.,
KEARNEY, MO.**

No. 13067.

Circuit Court of Appeals, Eighth Circuit.

Oct. 9, 1945.

Rehearing Denied Nov. 14, 1945.

Charles M. Miller, of Kansas City, Mo. (Ray E. Dougherty, of Washington, D. C., on the brief), for appellant.

Clay C. Rogers, of Kansas City, Mo. (James S. Simrall, of Liberty, Mo., on the brief), for appellee.

Before GARDNER and THOMAS, Circuit Judges, and MILLER, District Judge.

THOMAS, Circuit Judge.

This is a case arising under the laws of the United States. The suit was brought by the appellant, Federal Savings and Loan Insurance Corporation, as assignee of claims originally owned by the Liberty Federal Savings and Loan Association of Liberty, Missouri, to recover a total of $19,600 with interest. The defendant, appellee, Kearney Trust Company, is a corporation engaged in a general banking and trust business at Kearney, Missouri, situated about eleven miles from Liberty, the home of the Loan Association.

The Loan Association was organized under the provisions of the Home Owners' Loan Act of 1933, 48 Stat. 128, 12 U.S.C.A. § 1464. The Insurance Corporation was organized under the National Housing Act of 1934, 48 Stat. 1246, 12 U.S.C.A. §§ 1725-1732. Section 1726 provides that: "(a) It shall be the duty of the Corporation to insure the accounts of all Federal savings and loan associations."

The plaintiff's claim against the defendant is for money had and received. The complaint is in 15 counts and is based upon 15 checks issued by the Loan Association against its funds deposited in the First National Bank of Liberty, Missouri. The checks were all drawn payable to the order of the defendant bank and when received by it were wrongfully credited on its books to the president of the association and paid out on his order for use in his personal business. The checks ranged in amount from $200 to $2,500, and were issued at various times from November 12, 1941, to July 12, 1943.

During the time these transactions occurred, and for several years prior thereto, one Harold Wilson was president of the Loan Association and his sister-in-law Aileen Chrisman was its secretary. They were the only employees in charge of the business of the association and each had authority to draw checks on its funds. During the same period Samuel T. Kelly was vice-president and cashier of the defendant bank. No business relation had existed at any time between the Loan Association and the defendant bank. The testimony is not disputed that the checks were drawn and signed by Wilson or by Chrisman at his direction and made payable to the defendant Trust Company. They were sent by mail to the defendant and when received they were handled as cash items and credited, not to the Loan Association, but to an account under the name of "Harold and/or Evalyn Wilson, Farm Account." That ac-

count was paid out on checks· of Harold Wilson in his private business. The defendant was thus used by Wilson as an instrumentality for channeling the funds of the Loan Association of which he was president and managing officer from its depositary, the First National Bank, into his personal account in the Trust Company.

The defendant sent the checks to the Commerce Trust Company of Kansas City, Missouri, receiving credit on its account for the amount of each check. The checks were then collected from the First National Bank of Liberty, Missouri, and by that bank charged to the account of the Loan Association. After the checks were paid by the First National Bank statements of the account with the vouchers or paid checks were delivered to the Loan Association about every 30 days.

Over plaintiff's objection, in explanation of defendant's participation in the transaction, Kelly testified that Wilson opened the account about September, 1941. He then told Kelly that he had two farms between Kearney and Liberty at which he was handling livestock; that he wished to open a joint farm account for himself and his wife (Evalyn Wilson was his wife) in the defendant Trust Company for the purpose of paying his feed bills and other expenses on the farms; that from time to time he would send money which belonged to him by means of checks of the Loan Association to be credited to the account; that he would send them by mail; and that he would make them payable to the Trust Company as a protection against loss. Kelly told Wilson that would be all right.

Kelly testified further that: "Knowing him [Wilson] to be the president of the association, I told him we would be glad to handle it, and we did in that manner and put these stamps on them to indicate whose account they went to, such as we do many other checks." The stamp referred to and placed on the back of all the checks except one reads: "The Amount of this Item Deposited to the Credit of Harold and/or Evalyn Wilson, Farm Acct., in the Kearney Trust Co., Kearney, Mo. ——— Cashier."

Kelly testified, also, that knowing Wilson to be president of the Loan Association he accepted his statement as correct and true and relied upon it; that had he doubted the integrity of Wilson's statements he would not have handled the checks; but that he never investigated nor made inquiry concerning Wilson's authority.

Until this suit was brought in March, 1944, no protest or objection to the handling of the checks was ever made to the defendant. Chrisman testified that she did not know that the transactions were irregular; that when the statements came from the First National Bank Wilson always examined them and destroyed them, while the checks were placed in the files; that she never examined the checks nor noticed the stamp placed on the back of each of them by the defendant.

The trial of the case, after motions by both parties for a directed verdict were overruled, resulted in a verdict and judgment for the defendant on all counts of the complaint. Thereafter plaintiff's motion for judgment non obstante veredicto or for a new trial was overruled, as was also its motion for a rehearing. This appeal followed.

The plaintiff urges reversal of the judgment on three principal grounds: 1. That its motion for a directed verdict or for judgment non obstante veredicto should have been sustained. 2. That if the case were for the jury, the charge is erroneous. And 3. That the court erred in its rulings on the admission and exclusion of evidence.

Plaintiff's theory of defendant's liability based upon the facts established by the evidence is that: 1. The case is controlled by federal, not state or local, law. 2. The 15 checks made payable to the order of the Kearney Trust Company imported notice upon their face that the moneys represented by them belonged to the Loan Association, drawer of the checks. 3. Acceptance of the checks by the Trust Company imposed upon it the duty of paying out the money represented by the checks only when and as directed by the Loan Association. 4. Had the moneys called for by the checks belonged to Harold Wilson, the presumption is that they would have been drawn to his order. 5. Wilson's request to the Trust Company to credit the checks to his personal account for use in his personal business put the Trust Company on inquiry, and it failed to make inquiry at its peril. 6. The burden was on the defendant Trust Company (a) to plead and prove as a defense payment at the direction of the Loan Association, or (b) that Wilson had authority to direct that the checks be credited to his account.

The court instructed the jury as to Count I of the complaint, making the instruction

applicable to each of the 15 counts thereof, as follows:

"The Court instructs the jury that if as to Count I of the complaint it has been proved by plaintiff: (a) that on or about November 12, 1941, there was received by defendant a check of $1000 of Liberty Federal Savings and Loan Association payable to defendant; and (b) that Liberty Federal Savings and Loan Association was not then indebted to defendant in any amount; and (c) that defendant obtained in cash or credit on that check the amount called for therein; and (d) that defendant has not repaid the amount so obtained to Liberty Federal Savings and Loan Association or to any assignee of the claim of Liberty Federal Savings and Loan Association against defendant; and (e) that the claim of Liberty Federal Savings and Loan Association has been assigned to plaintiff, then, that is, if the matters referred to as (a), (b), (c), (d) and (e) have been proved by plaintiff (the burden of proof as to those matters is on plaintiff), your verdict will be for plaintiff as to Count I, unless your verdict shall be for defendant on the grounds now to be stated. If you find the facts to be: (f) that the president of Liberty Federal Savings and Loan Association represented to defendant that that Association from time to time would send to defendant its checks payable to defendant and directed defendant that it should deposit the proceeds of those checks to the credit of Harold Wilson and/or Evalyn Wilson; and (g) that defendant received and deposited the check described in this principal instruction in accordance with that representation and direction, if you find that that representation was made and that that direction was given; and (h) that the defendant, in depositing the check as directed, if it did so deposit it, relied on the representation and direction of the president of Liberty Federal Savings and Loan Association and upon the assumption that he was acting for and on behalf of that Association and within the scope of his authority; and (i) that defendant did not have knowledge that the president of the Liberty Federal Savings and Loan Association did not have authority from the Association to make the representation and give the direction described, if he did not have such authority, and if defendant did not know facts from which it reasonably might have inferred that the president of Liberty Federal Savings and Loan Association did not have that authority, if he did not have such authority, then, that is if all the matters referred to as (f), (g), (h) and (i) have been proved by defendant, your verdict will be for the defendant as to Count I."

Our first inquiry is whether the court erred in overruling plaintiff's motion for a directed verdict. The instruction imposed the burden of proof upon the plaintiff to establish five propositions designated in the instruction as (a), (b), (c), (d) and (e). We shall consider the evidence upon each of these propositions in the order named. (a) The receipt of the checks by the defendant was admitted by Kelly, the vice-president and cashier of the Trust Company, and the proof of their receipt was undisputed. (b) The evidence was undisputed that the Loan Association and the defendant bank had no business relations at any time other than those resulting from the handling of the checks involved in this suit. This established conclusively that the Loan Association was not indebted to the defendant bank. (c) Kelly admitted that the defendant Trust Company received a credit for each check from the Commerce Trust Company of Kansas City. (d) That the defendant has not repaid the amount so obtained is negatived by the admitted fact that the amount was credited to the farm account of Harold Wilson and his wife and that there were no other transactions at any time between the defendant and the Loan Association. (e) The assignment to the plaintiff of the claims of the Loan Association was established by undisputed evidence. The court erred, therefore, in submitting propositions (a), (b), (c), (d) and (e) to the jury.

The matters referred to as (f), (g), (h) and (i) in the instruction, the burden of proof of which was cast upon the defendant, are supported by the testimony of Kelly, supra. The defendant objected to the receipt of that testimony and took timely exception to the instruction. This part of the instruction relates to the principal affirmative defense pleaded by the defendant. The facts and the law controlling this part of the controversy will now be considered.

Before submitting the case to the jury the court filed a memorandum and order taking the motions for a directed verdict under submission and reserving a ruling thereon. In its memorandum the court, among other things, said: "The two authorities upon which counsel, respectively,

have chiefly relied are, for the plaintiff, Sims v. United States Trust Co., N.Y., 9 N.E. 605, and, for the defendant, Griffin v. National Bnak of Commerce, Mo.Sup., 246 S.W. 180, 183. After careful study I have concluded that the law of the case now on trial is declared for this court by the decision of the Supreme Court of Missouri in Griffin v. National Bank of Commerce." And in its memorandum and order on plaintiff's motion for judgment non obstante veredicto or for a new trial the court said: "Our charge to the jury was bottomed upon the theory of law embodied in Griffin v. National Bank of Commerce." And, again: "if we should proceed now to make findings of fact, * * * we should find that the facts are those which in our charge to the jury we said to the jury required a verdict for the defendant."

In the Griffin case the Keller & Tamm Manufacturing Company had for several years deposited its funds in the National Bank of Commerce. P. C. Scott, secretary and treasurer of the corporation, kept its books and was permitted to take checks for the pay roll to the bank to obtain money thereon. The vice-president of the corporation knew that Scott had from time to time embezzled or misappropriated moneys of the corporation, but this fact was not communicated to the bank. Over a period of time Scott took 32 checks to the bank drawn payable to the bank and upon his request the bank issued to Scott cashier's checks payable to the order of Scott who converted them to his own use. When the conversion was discovered the corporation assigned its claim to Griffin who sued the bank to recover the loss. Judgment was rendered for the plaintiff and upon appeal the Supreme Court of Missouri in a brief opinion said: "The proper determination of this case depends upon a question of fact, and that is: Did the bank have any knowledge or notice that Scott was stealing or misappropriating the funds of his company, which he was drawing from the bank, to his own use?" The court then said that: "I am unable to find a scintilla of evidence either direct, or from which it might be inferred that the bank had any such knowledge or notice of Scott's wrongdoing"; and the judgment was reversed with no further comment.

The plaintiff argues persuasively that the instant case is distinguishable on the facts from the Griffin case and that, therefore, the rule stated in that case is not applicable. The officers of the Keller & Tamm Manufacturing Company knew long before Scott was sent to the defendant bank with the 32 checks that he was an embezzler and was stealing the company's money, and they did not inform the bank of this fact. Such was not the situation in the present case. Under the circumstances of the Griffin case the Supreme Court of Missouri may have felt that the rule requiring one who deals with an agent to ascertain the extent of the agent's authority should not be applied. The same court might decide the present case differently. We shall not attempt to appraise the Missouri law on this point; for we are of the opinion that the point is controlled by federal, not state, law.

This is not a diversity of citizenship case. The plaintiff Federal Savings and Loan Insurance Corporation and the Liberty Federal Savings and Loan Association were both created and chartered pursuant to the provisions of the federal statutes cited supra. The purpose of the Loan Associations under the Act is expressed in 12 U.S.C.A. § 1464(a) as follows: "In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, the [Federal Home Loan Bank] Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations', and to issue charters therefor. * * *

"(d) The Board shall have full power to provide in the rules and regulations herein authorized. * * *

"(f) Each such association, upon its incorporation, shall become automatically a member of the Federal Home Loan Bank of the district in which it is located. * * *"

(k) provides that an association may be employed as a fiscal agent of the Government and may act as agent for any instrumentality of the United States.

Section 1467 provides a penalty for any one connected with an association who willfully misapplies any moneys or funds belonging to it.

The charter of the Loan Association provides that it shall have "power to sue and be sued, complain and defend, in any court of law or equity * * *"; it shall be un-

der the direction of a board of directors of not less than 5 nor more than 15; it shall act as a fiscal agent of the Government when designated for that purpose; and it shall not make any loans to an officer except upon share accounts and homes.

Section 1725(c) provides that a Federal Savings and Loan Insurance Corporation created under the Act "shall be an instrumentality of the United States"; that it shall have power "To sue and be sued, complain and defend, in any court of law or equity, State or Federal." When so designated by the Secretary of the Treasury, it "shall be a depositary of public money * * *." § 1725(d). It shall have power to liquidate the assets of any insured association and under § 1729(d) "to collect all obligations to the insured institutions."

The case thus presented is that the Loan Association and the plaintiff were both created by Congress to perform a broad public function. They were both federal instrumentalities but with powers limited to the purposes of their creation. Safeguards were provided for their funds, and the misapplication of such funds by any of their officers was prohibited as unlawful and condemned as criminal.

While the line separating cases controlled by federal law from those controlled by state law, where both arise under the laws of the United States, is not always clear, certain distinguishing principles have been established by the decisions of the Supreme Court. Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 485, 84 L.Ed. 694, involved the liability of a director of a national bank who knowingly gave his note to the bank as a substitute for shares of its own stock illegally purchased and held by the bank, the note being given upon the understanding that it was not to be paid and that the bank was to retain its interest in the stock. The question arose whether by Massachusetts law the maker of the note was precluded from setting up the illegality of the transaction as a defense. The Court said: "* * * it is the federal statute which condemns as unlawful respondent's acts. The extent and nature of the legal consequences of this condemnation though left by the statute to judicial determination, are nevertheless to be derived from it and the federal policy which it has adopted * * *." In D'Oench, Duhme & Co. v. Federal Deposit Ins. Corporation, 315 U.S. 447, 62 S.Ct. 676, 678, 86 L.Ed. 956, the Supreme Court, applying this principle, said:

"Respondent [F. D. I. C.], a federal corporation, brings this suit under an Act of Congress authorizing it to sue or be sued 'in any court of law or equity, State or Federal.' Sec. 12B, Federal Reserve Act. * * * we are of the view that the liability of petitioner [appellant] on the note involves decision of a federal not a state question under the rule of Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694." And see Sola Electric Co. v. Jefferson Co., 317 U.S. 173, 176, 63 S.Ct. 172, 87 L.Ed. 165. If this were not true the consequences resulting from violations of the statutory prohibitions enacted by Congress for the protection of these national institutions would be subject to conflicting local laws unrelated to the uniform purpose of the Acts. Estate of Putnam, 324 U.S. 393, 65 S.Ct. 811; United States v. Consolidated Elevator Co., 8 Cir., 141 F.2d 791.

Upon the authority of these cases we think the rights of the parties here are controlled by federal, not state, law.

The question remains whether, tested by federal law, the trial court erred in its instruction to the jury. It will be recalled that Kelly, vice-president and cashier of the defendant Trust Company, testified that he relied upon the representation of Wilson, president of the Loan Association, that the checks to be sent by mail would be made payable to the order of the defendant but that they would represent money belonging to Wilson, and that upon that representation the defendant accepted the checks when they were received and without further inquiry credited them to Wilson's account. The court instructed the jury that if the defendant had no knowledge that Wilson did not have authority from the association to make the representation and give the direction the verdict should be for the defendant. Although the responsibility of a bank under these circumstances is not covered by federal statute, it has long been the rule in federal courts that the duty of a bank requires it to make inquiry before acting upon such a representation. Central Nat. Bank v. Connecticut Ins. Co., 104 U.S. 54, 26 L.Ed. 693. In Conqueror Trust Co. v. Fidelity & Deposit Co., 8 Cir., 63 F.2d 833, 838, this court quoted with approval the following excerpt from Havana Cent. R. Co. v. Central Trust Co. of New York, 2 Cir., 204 F. 546, 551, L.R.A.1915B, 715: "But if the bank have knowledge that the officer [of the drawer of the check] is using the check for his per-

sonal benefit, e.g. to pay his debt to the bank *or to deposit it to his personal credit,* then the bank is put upon inquiry and if it fail to make it, pays at its peril." (Italics supplied.) In the present instance the defendant bank admittedly had knowledge that Wilson directed the checks payable to the order of the defendant to be credited to his own personal account for his personal use and failed, admittedly, to make inquiry in respect of his authority. See, also, Oklahoma State Bank v. Galion Iron Works & Mfg. Co., 8 Cir., 4 F.2d 337. In this case, as in the last cited case, the ownership of the funds represented by the check was apparent from the face of the checks. The case of Sims, Ex'r, v. United States Trust Co. of New York, N.Y., 9 N.E. 605, 606, relied upon by the plaintiff in the trial court, is to the same effect. In that case Sims delivered to one Crowell his check on the People's Bank, payable to the order of defendant Trust Company. Crowell delivered the check to the defendant and at his request received a certificate of deposit payable to himself on which he soon thereafter drew the money. On appeal from a judgment against the Trust Company in favor of Sims' executor the New York Court of Appeals, in affirming the judgment, said: "The check, upon its face, imported the ownership of the moneys represented in it by Dr. Sims, and his desire that its custody be transferred from the People's Bank to the defendant. * * * If he had so intended [to pay the money to Crowell], the check would have been made payable to Crowell's order. * * * The defendant could have refused to receive the deposit * * * but, having accepted * * * it was bound to keep Dr. Sims' moneys until it received his directions to pay them out."

These principles governing the responsibility of banks were followed by the Supreme Court of Missouri in St. Charles Savings Bank v. Edwards, 147 S.W. 978, decided in 1912, prior to the decision in the Griffin case, supra, relied upon by the trial court. We think they apply to the facts in the present case and control our decision.

■■■ The defendant argues in substance that, conceding that it was negligent in the first instance in not making inquiry into Wilson's authority and in relying on his statement that the checks would represent his moneys, nevertheless plaintiff is estopped to deny Wilson's authority. This contention is based on the claim that the Loan Association was negligent in not discovering the misapplication of its funds by Wilson and calling it to the defendant's attention after the First National Bank of Liberty had rendered a statement of account and returned the paid vouchers to the Loan Association in December, 1941. The argument is based upon the equitable doctrine of estoppel that where one of two innocent persons must suffer for a loss caused by another, the one whose negligence made it possible for that other to cause the loss should in equity and good conscience be required to bear it. The difficulty with this argument is that the defendant bank is not an innocent party in a legal sense. One is not an innocent party in the sense under discussion merely because he acted in negligent ignorance of his legal duty. St. Charles Savings Bank v. Edwards, supra. The defendant bank was bound to know that Wilson was not acting as agent of the Loan Association in inducing the bank to credit the checks to his personal account for use on his farms. Conqueror Trust Co. v. Fidelity & Deposit Co., supra. Further, the bank was held to a knowledge of all that the charter of the Loan Association disclosed as to the authority of its officers to withdraw its moneys and to what the laws under which the association was organized provide upon the subject. Havana Cent. R. Co. v. Central Trust Co., supra. The Loan Association made no representations to the defendant bank through any of its officers or agents, other than through Wilson himself, upon which defendant was authorized to rely. Washington Loan & Trust Co. v. United States, 77 U.S.App.D.C. 284, 134 F.2d 59, 61. In federal courts it is a settled principle that "local rules of estoppel will not be permitted to thwart the purposes of the statutes of the United States." Sola Electric Co. v. Jefferson Co., 317 U.S. 173, 176, 63 S.Ct. 172, 174, 87 L.Ed. 165. Finally, there is no evidence whatever that any one connected with the Loan Association as officer or employee, other than Wilson himself, had any actual knowledge that he was misapplying its funds or of his dealings with the defendant bank. See, also, Pomeroy, Equity Jurisprudence, 4th Ed., Vol. 2, § 803. Under all these circumstances the claim of estoppel is without merit.

Other contentions are urged by both parties. We have considered them all; but what we have already said disposes of them, or they are without merit.

Our conclusion is that upon the record made the court erred in denying the plaintiff's motion for a directed verdict. The judgment is accordingly reversed and the case remanded with instructions to vacate the judgment entered for the defendant and to enter judgment for the plaintiff.

## On Petition for Rehearing and Motion to Modify the Order for Mandate.

### PER CURIAM.

■ The appellee has filed a petition for rehearing and a motion to modify the mandate by granting a new trial. As ground for rehearing appellee's contention is that the only executive officer of the association to whom an inquiry could have been addressed other than Wilson himself was Chrisman, the secretary, and that had such inquiry been made she would have informed the bank that Wilson did have authority to draw the checks and that she believed that he was entitled to the money. There are two defects in this contention: First, inquiry as to Wilson's authority and his right to the money represented by the checks could have been made to the board of directors of the association. Second, Chrisman testified that as secretary she posted the books, signed checks and did whatever Wilson told her to do without questioning whether it was right or not. When Wilson told her to charge a check to a particular loan she did so without looking "to see whether or not it was proper to charge that check to that loan." Her answer to any inquiry must have been, therefore, that she did not know anything about Wilson's right to appropriate the funds of the association to his own use. To establish an estoppel the burden was upon the defendant to prove that it relied and acted upon the conduct of the association. Pomeroy, Equity Jurisprudence, 4th Ed., Vol. 2, § 805. As shown in the opinion, defendant relied solely upon Wilson's representations at its peril, because although Wilson was president of the association he was acting outside the ostensible scope of his agency in directing that checks made payable to the defendant should be credited to his personal account.

■ The motion to modify the mandate by granting a new trial is predicated upon the statements (1) that the defendant has a valid defense to the complaint and (2) that evidence of such defense was not produced at the trial because counsel for the defendant, in good faith, believed that plaintiff had failed to establish a prima facie case; that defendant had a right to rely upon the representations of Wilson; and that the plaintiff was estopped to deny that the money represented by the checks belonged to Wilson. We have considered the motion and the arguments in support thereof and find they are without merit. In this case there was a motion for a directed verdict and for judgment non obstante veredicto both of which were overruled. In such a case upon reversal that judgment should be entered which the trial court would have entered had it sustained either motion.

The petition for rehearing and the motion to modify the mandate are accordingly denied.