Harry W. PETTIGREW, in the Office and Capacity as Trustee-in-Bankruptcy for Windsor Eastmann Group, Inc., Appellant,

v.

CITIZENS TRUST BANK, Appellee.

Civ.A. No. 1:96–CV–2575–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

May 6, 1998.

Harry Winthrop Pettigrew, Pettigrew & Trippe, Atlanta, GA, for appellant.

Louis Gregory McBryan, Atlanta, GA, for appellee.

### ORDER

FORRESTER, District Judge.

This matter is before the court on Defendant's objections [56–1] to Bankruptcy Judge Joyce Bihary's proposed findings of fact and conclusions of law on the parties' cross motions for summary judgment [54–1].

### I. Statement of the Case

On November 20, 1995, Plaintiff Harry W. Pettigrew filed the present adversary action against Defendant Citizens Trust Bank ("CTB") in his office and capacity as Chapter 7 Trustee-in-Bankruptcy for the estate of Debtor Windsor Eastmann Group, Inc. In his two count complaint, Plaintiff seeks the recovery of $100,000.00 in damages due to Defendant's alleged negligence and conversion in handling a check drawn on Debtor's corporate account and made payable to Defendant. Plaintiff later amended his complaint to include an action for fraudulent conveyance.

The parties filed cross motions for summary judgment and submitted them, along with stipulated facts, to the bankruptcy court for consideration. Since these claims were related, non-core matters under 28 U.S.C. § 157(c) and Defendant did not consent to the entry of a final order by the bankruptcy court, the bankruptcy court prepared proposed findings of fact and conclusions of law. On September 13, 1996, Bankruptcy Judge Joyce Bihary issued an opinion in which she recommended that this court (1) grant Plaintiff's motion and deny Defendant's motion for summary judgment on the negligence claim; (2) grant Defendant's motion and deny Plaintiff's motion on the conversion claim; and (3) decline to address the fraudulent conveyance claim. Defendant has filed timely objections to Judge Bihary's findings and conclusions on the negligence claim. Pursuant to section 157(c)(1) and Federal Bankruptcy Rule of Procedure 9033(d), the court will conduct de novo review upon the record of those matters to which Defendant specifically objects.

### II. Undisputed Stipulated Facts

As a preliminary matter, after examining Judge Bihary's opinion and the record, the court ADOPTS those factual findings of the bankruptcy judge that are not specifically objected to as the order of the court. In order to provide context for this court's discussion, the court finds the following material facts to be undisputed.

Debtor Windsor Eastmann Group, Inc., is a Virginia corporation which formerly was in the business of providing long-distance telephone centers and services. The debtor's sole shareholder, sole director and president was John H. Gray. His wife, Deborah L. Gray, was the debtor's vice-president and secretary. At all times relevant to this action, Mr. and Mrs. Gray were Debtor's only two employees. Debtor maintained a corporate checking account with Bank One of Columbus, Ohio, and its checks were preprinted in bold with its name in the top left corner. Mr. and Mrs. Gray were the only two individuals with signature authority on the account.

In January of 1995, Mr. Gray entered Defendant's branch office in Atlanta, Georgia. He presented the bank with one of Debtor's checks payable to the order of "CtB" in the amount of $100,000.00. At the time, Debtor had no business relationship with the bank and was not indebted to it. Mr. Gray met with Julia Edwards, the manager of the branch, and opened a new personal account with account number "46431448." He then sought to deposit Debtor's check into the new account. Ms. Edwards entered Mr. Gray's name, address, and social security number into "CheckSystems" to determinate whether any other bank subscribing to the system had reported any problems with him. No adverse information was discovered. She then witnessed him signing the corporate check on behalf of Debtor and asked him for two (2) pieces of identification. After receiving them, she checked his signature against the signature on his passport. Debtor's check was then endorsed, "Deposit Only 46431448" and deposited directly into Mr. Gray's new personal checking account. Ms.

Edwards informed him that a ten-day hold would be placed on his new account in order to provide Debtor's check with time to clear. Defendant made no further inquiry beyond Mr. Gray.

On or about January 10, 1995, Debtor's $100,000.00 check was paid by Bank One of Columbus. Ten days later, an involuntary bankruptcy petition was filed against Debtor. While the twenty-day period for the debtor to answer the petition was running, Mr. Gray withdrew all of the $100,000.00 that he had placed in his personal account with Defendant and closed the account.

Currently, Debtor is insolvent and in bankruptcy, and Mr. and Mrs. Gray have disappeared. In addition, there are no assets for the trustee in bankruptcy to administer to pay creditors. The trustee has brought this action alleging that Defendant CTB was negligent in not making an inquiry into Mr. Gray's authority before allowing him to deposit Debtor's funds into his own personal account.

III. Discussion

█ In order to recover for a defendant's negligence under Georgia law, a plaintiff must show that (1) the defendant had a legal duty to conform to a standard of conduct in order to protect the plaintiff from an unreasonable risk of harm; (2) the defendant breached that duty; and (3) the breach was the proximate cause of damages to the plaintiff. *Brown v. RFC Management, Inc.*, 189 Ga.App. 603, 604, 376 S.E.2d 691 (1988) (citation omitted).

A. *The Bankruptcy Court's Opinion*

Bankruptcy Judge Bihary found in her opinion that Defendant had a common law duty to make an inquiry into Mr. Gray's authority before allowing him to direct Debtor's check to the bank for $100,000.00 to his own account. Although no Georgia law explicitly discussed such a duty, the bankruptcy judge derived its existence from numerous cases from other jurisdictions. *See, e.g., Federal Ins. Co. v. NCNB Nat'l Bank of N.C.*, 958 F.2d 1544, 1549 (11th Cir.1992) (applying in case arising under Florida law common law duty in absence of any Florida

cases expressly discussing issue); *FSLIC v. Kearney Trust Co.*, 151 F.2d 720, 725 (8th Cir.1945); *Kaiser–Georgetown Community Health Plan, Inc. v. Bankers Trust Co. of Albany, N.A.*, 110 Misc.2d 320, 442 N.Y.S.2d 48 (N.Y.Sup.Ct.1981); *Sun 'n Sand, Inc. v. United California Bank*, 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920, 935 (1978); *see also* 9 C.J.S. *Banks & Banking* § 327. According to these authorities, "[a] bank that receives a check payable to it, where the drawer is not indebted to it, has a duty, before paying the check, to inquire whether the drawer's agent is authorized to negotiate the check, since the bank is authorized to pay the check only in accordance with the drawer's directions." *NCNB Bank*, 958 F.2d at 1548 (citations omitted). In such situations, "[t]he use of the [bank] as payee of the check indicate[s] the drawer's intention to lodge the moneys in its custody, and place them under its control." *Sun 'n Sand, Inc.*, 148 Cal. Rptr. 329, 582 P.2d at 936 (citation omitted). As a result, when the bearer of the check attempts to deposit the moneys into his own personal account, the bank acts at its own risk in treating it as payable to the bearer. *Id.* As with all duties, this duty to inquire arises out of the existence of a foreseeable risk of harm, namely the possibility of misappropriation of the moneys by the bearer of the check. *Id.* at 937.

The bankruptcy judge further found that Defendant breached this duty because it never asked Mr. Gray why the check was payable to its order, it never asked him for a corporate resolution conferring authority on him to conduct the transaction, it never inquired of the corporate drawer, and it never contacted Mrs. Gray. In other words, before accepting the check for deposit into Mr. Gray's personal account, it did not obtain any objective indicia from which it could reasonably have concluded that Mr. Gray was authorized to move the $100,000.00 from Debtor, to it, and then to Mr. Gray's personal account. Finally, on the issue of proximate cause, the bankruptcy judge found that Defendant's failure to inquire helped cause Debtor's loss.

### B. Defendant's Objections

Defendant filed numerous objections to the factual findings and legal conclusions of the bankruptcy judge on the general grounds that she failed to apply the Georgia law of negligence. When distilled to their essence, these objections may be grouped in three main categories. First, Defendant objects to the bankruptcy judge's imposition of a duty on the grounds that it is not recognized under Georgia law. Defendant contends that it had no duty to inquire beyond the drawer of the check simply because the check was made payable to it. Instead, Defendant argues that, under Georgia law, it was entitled to rely on a fiduciary to discharge lawfully all of his duties. See O.C.G.A. § 7–1–352(a).[1] Second, Defendant argues that it did not breach this duty because it did inquire of Mr. Gray, the sole shareholder of the corporation, and the corporate check itself constituted Board authorization for the action. Finally, Defendant objects on the grounds that the bankruptcy judge erred in finding that its breach was the proximate cause of Debtor's damages because any inquiry would have been futile.

### C. Legal Analysis

■ After careful consideration, the court concludes that even if a duty existed and it was breached, Plaintiff has failed to offer any evidence that the breach was the proximate cause of Debtor's loss. Since Plaintiff's claim is for negligence under Georgia law, in order to recover he must show that Defendant's breach was the proximate cause of damages to Debtor. Anneewakee, Inc. v. Hall, 196 Ga.App. 365, 367, 396 S.E.2d 9 (1990). A wrongful act is the proximate cause of an injury when the injury can be directly traced to the act, and the injury would not have resulted "but for" the act. Parris v. Pledger Ins. Agency, Inc., 180 Ga. App. 437, 439, 348 S.E.2d 924 (1986); Hous-

ing Auth. of Atlanta v. Famble, 170 Ga.App. 509, 512, 317 S.E.2d 853 (1984). Stated another way, no matter how negligent he may be, a defendant does not cause an injury if the injury would have occurred regardless of the defendant's act or omission. Famble, 170 Ga.App. at 512, 317 S.E.2d 853; General Motors Corp. v. Davis, 141 Ga.App. 495, 496, 233 S.E.2d 825 (1977) (citation omitted); see also Anthony v. Chambless, 231 Ga.App. 657, 500 S.E.2d 402, 404–05 (1998) (in medical malpractice case involving alleged negligence in treatment, in order to establish proximate cause plaintiff must show that, with alternate treatment, the injury could have been avoided); White v. Rolley, 225 Ga.App. 467, 484 S.E.2d 83 (1997) (in order to establish proximate cause in legal malpractice case, plaintiff must show that but for attorney's negligence, he would have won lawsuit). To meet his burden, a plaintiff must introduce evidence that allows for the reasonable conclusion that it is more likely than not that a defendant's conduct was the cause of the injury. Anneewakee, Inc., 196 Ga.App. at 367, 396 S.E.2d 9 (citation omitted). When there is a mere possibility of causation or the jury would have to speculate, then the plaintiff has failed to meet his burden. Id. In this case, therefore, in order to survive Defendant's motion for summary judgment, Plaintiff must offer some evidence that Defendant's failure to make an inquiry caused Debtor to suffer its loss. See Travelers Indem. Co. v. Center Bank, 202 Neb. 294, 275 N.W.2d 73, 76–77 (1979).

■ According to the undisputed facts in the record, Mr. and Mrs. Gray were Debtor's only two employees. Mr. Gray was the President, sole shareholder, and sole director. Mrs. Gray was the vice-president and secretary. The court assumes for the purposes of this Order that, when presented with a check to its order, Defendant had a duty to inquire before allowing the presenter to deposit the

---

1. O.C.G.A. § 7–1–352(a) provides that "[w]henever any agent, administrator, executor, guardian, trustee, either express or implied, or other fiduciary, whether bona fide or mala fide, shall deposit any money in any bank to his credit as an individual, or as such agent, trustee, or other fiduciary ..., such bank shall be authorized to pay the amount of such deposit, or any part

thereof, upon the order of such agent, administrator, executor, guardian, trustee, or other fiduciary, signed with the name in which such deposit was entered, without being accountable in any way to the principal, cestui que trust, or other person or corporation who may be entitled to or interested in the amount so deposited."

check into his own personal account. According to the common law, to satisfy this duty, Defendant should have inquired of Debtor's Board of Directors and/or sought a corporate resolution setting forth Mr. Gray's authority to engage in his requested transaction. *See, e.g., Kearney Trust Co.,* 151 F.2d at 727.

Plaintiff has offered no evidence, however, that if Defendant had taken any of these actions it would have allowed Defendant to discover the wrongfulness of Mr. Gray's conduct. First, Debtor's entire Board of Directors was standing in Defendant's lobby in the person of Mr. Gray, presenting the check. There is no evidence that, if asked, Mr. Gray would have said the transaction was not authorized or that he would have refused to produce a corporate resolution authorizing him to take the desired actions. In fact, given Mr. Gray's conduct, there is no reason to infer that he would have abandoned his actions or admitted his lack of authority if Defendant had questioned him. As a result, it cannot be said that, but for Defendant's failure to inquire of Debtor's board of directors, Debtor would not have suffered a loss. Even if Defendant had a duty to inquire beyond the board of directors, Plaintiff has not offered any evidence that the only other corporate officer, Mrs. Gray, would have told Defendant that Mr. Gray did not have authority to conduct the transaction. As a result, the court concludes that Plaintiff has simply failed to point to any actions that Defendant could have taken that would have informed it that Mr. Gray did not have authority to direct the $100,000.00 to his own account.

In all the other cases stating this common law duty, the corporation that suffered a loss had a board of directors or other officers who might have indicated to a bank making an inquiry that the employee in question was abusing his authority. *See, e.g., Sun 'n Sand, Inc.,* 148 Cal.Rptr. 329, 582 P.2d at 936 (while discussing negligence claim, court noted that "[b]y making reasonable inquiries, [defendant] could have discovered the fraudulent scheme and prevented its success."). Plaintiff cites to two cases in support of his argument that, even if the inquiries would

have been futile, the bank still breached its duty and caused loss if it failed to conduct an investigation. *See Kearney Trust,* 151 F.2d at 727; *Douglass v. Wones,* 120 Ill.App.3d 36, 76 Ill.Dec. 114, 458 N.E.2d 514, 522–23 (Ill. App.1983).

The court, however, does not read those two cases to stand for that proposition and finds them easily distinguishable. In *Kearney Trust,* for example, the Eight Circuit affirmed a court's entry of summary judgment for the plaintiff. *Kearney Trust,* 151 F.2d at 727. The defendant bank moved for rehearing on the grounds that its inquiry would have been futile because the only other officer that it could have contacted to ascertain the authority of the check presenter would have been the secretary, and she would have told it that he was authorized to draw the checks and was entitled to the money. *Id.* The Eighth Circuit rejected this argument on the grounds that the bank could have made an inquiry to the corporation's board of directors. *Id.* It also noted that the evidence in the record indicated that the secretary would have told the bank that she had no knowledge of the presenter's authority. *Id.* In this case, in contrast, Mr. Gray was the entire board of directors, and there is nothing to indicate that Mrs. Gray would have told the bank that she was not aware of the extent of his authority. The case of *Douglass* is easily distinguishable from the present case because the issue was not proximate cause, but instead was whether the defendant banks, as holders in due course, were entitled to protection under the Uniform Commercial Code against the plaintiffs' claims for conversion and unjust enrichment. *Douglas,* 76 Ill.Dec. 114, 458 N.E.2d at 522–23. The defendant banks argued, in motions to dismiss, that they did not have a duty to inquire before paying a presenter money from checks deposited to their order because inquiries would have been fruitless since none of the corporation's officers knew of the disloyal employee's actions. *Id.* at 522. The appellate court first noted that it could not conclude that the inquiry would have been futile because there was nothing in the complaint indicating when the corporation's officers learned of the employee's misappropriations or when the checks were cashed.

*Id.* at 523. As a result, it found it conceivable that, had the banks contacted the plaintiffs, they would have learned of the employee's actions and prevented them. *Id.* It then held that the results of an inquiry were not determinative on the issue of whether a bank seeking holder in due course status had a duty to inquire in the first place. *Id.* Instead, the court found that a bank's duty to inquire arose from the face of the check. *Id.*

This court cannot agree that Defendant is liable in negligence if it fails to conduct an inquiry when there is no evidence that an inquiry would have made any difference in preventing Debtor's loss. Since Plaintiff has failed to meet his burden of showing proximate cause, Defendant is entitled to summary judgment on the negligence claim.

## IV. Conclusion

Accordingly, after conducting de novo review on the record, the court declines to adopt the bankruptcy judge's recommendation that Plaintiff's motion for summary judgment on the negligence claim be granted and that Defendant's motion for summary judgment be denied. Instead, since Plaintiff has failed to offer evidence that Defendant's act or omission was the proximate cause of Debtor's loss, the court GRANTS Defendant's motion for summary judgment on the negligence claim and DENIES Plaintiff's motion.

Furthermore, the court ADOPTS the bankruptcy judge's disposition of the conversion claim and RECOMMITS the fraudulent conveyance issue to the bankruptcy court for resolution.